RICHARD D. FENBY AND JAMES STIRRAT, EX'RS OF JAMES JOHNSON, DEC'D, AND JOSEPH JAMES JOHNSON, *vs.* MARGARET ANN JOHNSON.

WILL—CONSTRUCTION OF: EXECUTORY DEVISE: CROSS-REMAINDERS BY IMPLICATION: GIFT: JURISDICTION.—A testator by his will gave to his wife one-third of his estate and property during her life or widowhood, and then devised as follows: "I give, devise and bequeath the other two undivided thirds to my children equally. But it is my will that in case both my children shall die in their minority unmarried, without issue, and intestate, that the portion so given and devised to them, shall go to and be held by my aforesaid wife, if she shall be then living, so long as she shall live and remain a widow, and at her death or subsequent marriage, then I give and bequeath the same to my right heirs." The testator left two children, one of whom died in her minority, intestate, and the widow renounced taking under the will. On a bill filed against the executors, by the widow in her own right, and as adm'r of her daughter and as guardian of her son, HELD:

1st. That the children took under this devise as tenants in common, in fee, of the lands, and an absolute estate in the personalty, which vested upon the death of the testator; and the limitation over upon the contingency named in the will, was good as an executory devise.

2nd. That there was no implication of cross-remainders between the devisees, but on the death of the one, her estate devolved upon her heirs, subject however to be afterwards defeated by the happening of the contingency named in the will.

3rd. That the widow, as distributee, was entitled to one-half of the personalty of her said daughter, acquired under the will.

4th. That if a gift is made to several persons in fee-simple, as tenants in common, with a limitation over in case they *all* die under age, the share of one of the devisees dying during minority will devolve upon his representatives unless and until the whole die under age.

5th. That the same rule applies to the gift of an absolute interest in personalty.

6th. The jurisdiction of Courts of Equity in cases like this, is well established.

PRACTICE IN EQUITY.—Under a prayer for general relief, the complainant is not entitled to claim relief beyond the general scope and object of the bill.

ACCOUNT OF RENTS AND PROFITS.—Where executors are entitled as trustees under a will to receive the income of the estate devised to the children, both real and personal, for the purposes specified in the will, an account of the rents of the realty received by them may properly be taken.

Appeal from the Circuit Court of Baltimore City :

On the 24th day of October 1856, James Johnson of Baltimore, made his last will and testament, whereby, after directing his just debts and funeral expenses to be paid by his executors, he devised and bequeathed as follows:

"I give, devise and bequeath to my wife, an undivided third of all my estate and property, to be held by her for and during the term of her natural life or widowhood, whichever shall terminate the soonest; and from and after the death or second marriage of my said wife, I give, devise and bequeath said undivided third to such of my children and descendants as may be then living, to take *per stirpes* and not *per capita.* I give, devise and bequeath the other two undivided thirds to my children equally. But it is my will that in case both my children shall die in their minority, unmarried, without issue and intestate, that the portion so given and devised to them, shall go to and be held by my aforesaid wife, if she shall be then living, so long as she shall live and remain a widow, and at her death or subsequent marriage, then I give and bequeath the same to my right heirs.

"And it is my will, and I hereby direct that all my furniture, plate and personal effects in and about my dwelling house, shall be left in possession of my said wife, so long as she remains a widow, and keeps my children residing with her. I nominate, constitute and appoint Richard D. Fenby and James Stirrat, executors of this my will, with power to them to receive the income of my said childen's share, and appropriate so much thereof as may be necessary to their support, and to their education in the Protestant religion."

The testator died in the month of December 1856. The executors named in his will, duly qualified and proceeded to act as such. His widow, within the time prescribed by law, renounced the legacies and bequests made to her, and elected to take her dower and thirds of her husband's estate. The testator had two children, Emma J. Johnson

and Joseph James Johnson, both of whom survived him. His daughter Emma died intestate during her minority, and her mother took out letters of administration upon her estate; and was also appointed guardian of the son Joseph James Johnson, who was under age.

The bill in this case was filed by the widow against the executors, and the said Joseph James Johnson. claiming that by the true construction of the will of the said James Johnson, his two children took each of them a vested undivided interest and estate in the residuum of the whole estate of their father. And that she was distributee under the statute, of one equal half part of the personal estate of her said child Emma; and that her said son Joseph James Johnson was distributee of the other half part thereof, and also heir at law of his said sister.

And the complainant charges, "that she hath frequently and in a friendly manner applied to the said Richard D. Fenby and James Stirrat, executors as aforesaid, to charge themselves with the list of debts due to the estate of their said testator as aforesaid, and more particularly with two debts due said estate by Samuel Fenby & Brother, (of which firm the said Richard D. Fenby is a co-partner,) amounting to the sum of six thousand dollars, with interest thereon, and to pay unto your oratrix, as widow as aforesaid, her third part of the said personal estate, and to pay her as administratrix as aforesaid of the said Emma J. Johnson, deceased, the third part thereof, to which your oratrix is entitled as such administratrix; and also to account with and pay to her, one-third of the income of the real estate of her said husband, to which she is entitled for her dower therein; and for one other third part thereof, which accrued in the lifetime of the said Emma J. Johnson, to which your oratrix is entitled as administratrix as aforesaid; and also to account to your oratrix for any investments which they have made, if any they have made as trustees as aforesaid, of the estate of her said husband. But now so it is, may it please your Honor, the said Rich-

ard D. Fenby and James Stirrat have hitherto wholly neglected and omitted to comply with such her reasonable requests, sometimes pretending that they are not chargeable with said debts, and at other times pretending that they have made large and safe investments thereof, or taken sufficient security therefor; and again pretending that your oratrix hath no right to any part of said estate, or to call for any account of the same."

And the bill prays, "that the said Richard D. Fenby and James Stirrat, from time to time, may account under the decree of this Court for all of the said estate which has come or may come to their hands, and particularly for the list of debts aforesaid, and be charged therewith; and may account for any investments they have made or securities received, if any; and may pay and deliver over to your oratrix her proportion of the said estate, as widow, for her dower and thirds; and also for her proportion thereof as administratrix as aforesaid; and that your Honor will establish and fix the allowance to be made and paid to her annually for the support and maintenance of her son, the said Joseph James Johnson; *and that she may have such other and further relief as the nature and circumstances of the case may require,*" &c.

An interlocutory decree against the executors was passed, and evidence taken, but an answer was subsequently filed by them, admitting most of the averments of the bill, except certain allegations impeaching the propriety of their proceedings, and charging them with fraud. These charges and allegations the defendants denied, and they pleaded that the Court had no jurisdiction in the premises, and that the complainant's remedy, if any, was at law.

The case being submitted, the Court, (KREBS, J.,) delivered the following opinion:

"The only questions submitted to the Court at the hearing of this cause, arise upon one of the clauses in the will

of James Johnson, deceased, a copy of which is filed in this cause, marked Exhibit 1.

"A part of the clause contains a devise over to the testator's widow, which, with the other devises and bequests that he made to her, she renounced. Omitting, therefore, that part, the clause is in these words:

"'I give, devise and bequeath the other two undivided thirds to my children, equally. But it is my will, that in case both my children shall die in their minority, unmarried, without issue, and intestate, then I give, devise and bequeath the same to my right heirs.'

"The first question is, what is the character of the devise to the testator's two children? I understand that the property to which this testamentary disposition applies, is real and personal estate. I am of opinion that it is clearly an executory devise. The testator gives the two-thirds of his estate to his two children, in equal proportions, absolutely, in the first instance; and then, in the event of contingencies, which must occur, if at all, during their minority, it is limited over to his right heirs. Here, then, is an absolute bequest of personal estate, with a limitation over, to take effect upon a contingency which must happen within the period allowed by the rule established in reference to such limitations. It is an exact example of one of the classes of executory devise as described by the elementary writers. *Kent* in his *Comm.*, 4 *vol.*, 268, says, one kind of executory devise is, 'where the devisor parts with his whole estate, but, upon some contingency, qualifies the disposition of it, and limits an estate on that contingency.' See also, *Biscoe vs. Biscoe*, 6 *G. & J.*, 232. *Woodland & Wife vs. Wallis, ex'r of Mason*, 6 *Md.*, 151. *Raborg's adm'r vs. Hammond*, 2 *H. & G.*, 42. *Jones vs. Southoron*, 10 *G. & J.*, 187.

"The next question is, will cross-remainders be implied between the testator's two children, from the direction in his will, 'but, in case *both my children shall die* in their mi-

nority, unmarried, without issue, and intestate, then I give
the same to my right heirs?'

" The rule that cross-remainders will be implied between
devises, from such words as these, is firmly settled in cases
where they take estates tail; but a different rule has, after
some conflict of authority, been adopted in cases in which
they take estates in fee, with executory limitations over.
The ground of these opposite decisions seems to be, that
the same reason, for the rule, does not exist in the two
classes of cases.    Cross-remainders are implied amongst
tenants in tail, to prevent a chasm in the limitations,
inasmuch as some of the estates tail might expire, while
the ulterior devise could not take effect until the failure of
*all*.    But in cases of limitations in fee of real estate, or of
an absolute estate in personal property, as in the case here,
the gift vesting in the persons to whom the testator has
given his whole estate in the property, upon their death it
will vest in their legal representatives, and thus a chasm
cannot occur, while the ultimate devise is awaiting the con-
tingency upon which it is to be gratified.    The law, as I
understand it to be now settled, is clearly expressed in the
example given by *Jarman* in the 2d volume of his *Work on
Wills*, *p.* 474: 'If a gift is made to several persons, in fee-
simple, as tenants in common, with a limitation over, in
case they all die under age, the share of one of the devisees
dying during minority, will devolve upon his representa-
tives, unless, and until, the whole die under age.'    And
there is no distinction in regard to this rule between real
and personal estate.    This learned author, in the 43d chap-
ter of his work, 2d vol., in which he discusses the question
which he prefixes to the chapter, 'Whether cross-executory
limitations can be implied among devisees in fee, or lega-
tees,' has collected all the authorities upon the subject, and
shews the conflict between them, and concludes that the
cases of *Skey vs. Barnes*, 3 *Merr.*, 334, and *Baxter vs. Losh*,
14 *Beav.*, 612, have fixed the rule of law as I have stated
it above, on this important doctrine of testamentary con-

struction. This rule has been followed ever since these de-cisions, in England, as appears from the cases of *Turner vs. Frederick*, 5 *Sim.*, 466. *Templeman vs. Warrington*, 13 *Id.*, 267. *Cohen vs. Waley*, 15 *Id.*, 318. *Mair vs. Quilter*, 2 *Y. & C.*, cc. 465.

"In the case of *Pict vs. Armistead*, in the Supreme Ct. of *N. Car.* 2 *Iredell's Eq. Rep.*, 231, the only case in which the question, so far as I have been able to discover, has been presented to an American Court, the judge who de-livers the opinion examines all the cases upon the subject, and adopts the rule as settled in *Skey vs. Barnes*, as the true rule of construction. I am therefore of opinion, that cross-remainders between the children do not arise by im-plication from the terms of this will; that the devise vested in them as tenants in common; and upon the death of either, before the contingency, on which the whole property was to go over to the testator's heirs, his share would devolve upon his legal representatives, subject to the contingency of passing to these heirs, in the event of the occurrence of the contingencies upon which these heirs were to take. I will therefore pass a decree in conformity with these views."

By the decree passed in conformity with the foregoing opinion, it was, *inter alia*, "Ordered, that an account be taken of the estate of said James Johnson, deceased, real and personal, and of the income, rents, issues and profits thereof."

Under this decree an account was stated by the auditor, to which exceptions were filed by the defendants, but no further action was had thereon.

From the above mentioned decree the defendants took their appeal.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*John H. Thomas*, for the appellants contended, that the decree was erroneous in allowing to the appellee her daugh-ter's share in the property devised, because:

Fenby, et·al., vs. Johnson.

1st. The will created, by implication, cross-remainders between the children, each being entitled to the share of the other, in the event of his or her dying, during "minority, unmarried and intestate." 2 *Blackstone's Commentaries*, 381. *Forest vs. Whiteway*, 3 *Exch.* 366, 367. *Wright vs. Holford, Cowper*, 31. *Doe Ex. dem. Georges vs. Webb*, 1 *Taunt.*, 234. *Scott vs. Bargeman*, 2 *Peere Williams*, 68. *Currie vs. Gould*, 4 *Beav.*, 117. *Mackell vs. Winter*, 3 *Vesey*, 536, 541. *Green vs. Stephens*, 12 *Vesey*, 418 & *S. C.* 17 *Vesey*, 64, 79. 4 *Kent's Commentaries*, 213, 214, note a, *marginal pages* 201, 202. *Goldsborough vs. Hawkins*, 1 *H. & McH.*, 157.. *Chew vs. Chew*, 1 *Md. Rep.*, 163.

2d. The limitation over, which creates the cross-remainders, by implication, is not too remote, being dependent on an event which must happen, if at all, during the widowhood of the wife. *Drury vs. Negro Grace*, 2 *H. & J.*, 356 and 358. And during the minority of the children. *Dallam vs. Dallam*, 7 *H. & J.*, 220, &c. *Raborg vs. Hammond*, 2 *H. & G.*, 53. *Jones vs. Sothoron*, 10 *G. & J.*, 187. 2 *Jarman on Wills*, 428. Especially is this so as to personalty. *Clagett vs. Worthington*, 3 *Gill*, 93. *Woodland vs. Wallis*, 6 *Md. Rep.*, 165.

3d. The governing rule of construction is the intent of the testator, as derived from the whole will. *Jones vs. Earl*, 1 *Gill*, 395. *Chew vs. Chew*, 1 *Md. Rep.*, 163. *Douglass vs. Blackford*, 7 *Md. Rep.*, 8.

4th. He clearly did not intend his wife to have more than the bequests made to her specifically, during the life of either of his children.

5th. The construction contended for by the appellee, would give her an additional share on the death of *one*.

6th. He devises over the children's *portion*, not *portions*, on the happening of a certain contingency, and the trustees were to receive the income of his children's *share*, not *shares*, showing that he intended their two-thirds to constitute one portion, one share, which they were to enjoy

v. 21

equally with the contingent right of survivorship. *Doe Ex. dem. Georges vs. Webb*, 1 *Taunt.*, 233.

7th. That the appellants had nothing to do with the realty, either as executors or trustees under the will, except to receive and disburse the children's *share* of income from it, for their maintenance and education. There was no allegation in the bill that they had collected any rents, or assumed to interfere with any other realty than that taken from the Messrs. Fenby in lieu of a debt due the deceased, which, by the express order of the Court, was to be treated as personalty. The decree was therefore erroneous in requiring an account of the real estate, of which the deceased died seized to be taken, and in requiring the executors to pay over to the appellee a share of what might accrue in future.

8th. That no necessity for the interposition of a Court of Equity was shown, and the Court had no jurisdiction in the premises. *Lawson vs. Davis*, 7 *Gill*, 345.

9th. That the appeal was not prematurely taken. Act 1854, ch. 367. *Goodburn vs. Stevens*, 5 *Gill*, 20. *Young vs. Frost*, 1 *Md. Rep.*, 394.

*Wm. Schley* and *Geo. H. Williams*, for appellees, argued:

1. That by the will, the children, as to the two-thirds devised to them equally, took as tenants in common, in fee, as to the realty; and an absolute estate, in equal parts, in the personalty, liable to be divested upon the happening of the specified contingency. *Davenport vs. Hanbury*, 3 *Ves.*, 257.

2. And that consequently cross-executory limitations are not to be implied; and that the share of the one dying during minority, devolved upon her representatives, not to be divested until, and unless, the contingency shall happen of both dying "in their minority," &c. 2 *Jarman on Wills*, p. 482, (*Marg'l*) 472. *Skey vs. Barnes*, 3 *Mer.*, p. 334. 2 *Powel on Devises*, 221 to 231. *Sturgess vs. Pearson*, 4 *Madd.*, 411.

3. This being a bill for "an account," with a prayer for general relief, and no objection having been taken to the form of the bill in the Court below, and the executors having admitted one investment in real estate, it cannot now be contended that the decree went beyond the case made in the bill.

4. That the Court had jurisdiction. *Barnes vs. Compton*, 8 *Gill*, 397. 1 *Story's Eq.*, sec. 502.

The appellee's counsel also cited *Mackell vs. Winter*, 3 *Ves.*, 236. *Harrison vs. Foreman*, 5 *Ves.*, 207. *Cohen vs. Waley*, 15 *Simons*, 318. *Dodson vs. Hay*, 3 *Bro. Ch. Rep.*, 404. *Murray vs. Addenbrook*, 4 *Russell*, 407. *Blease vs. Burgh*, 2 *Beav.*, 222. *Chew vs. Chew*, 1 *Md. Rep.*, 163.

BARTOL, J., delivered the opinion of this Court:

The main question arising upon this appeal, and as it appears by the opinion of the Judge of the Circuit Court, the only question submitted to him at the hearing of the cause, involves the construction of the will of James Johnson, deceased. The particular clause of the will, which has given rise to this controversy, after giving to the wife of the testator one third of his estate and property during her life or widowhood, is as follows:

"I give, devise and bequeath the other two undivided thirds to my children equally. But it is my will, that in case both my children shall die in their minority, unmarried, without issue, and intestate, that the portion so given and devised to them, shall go to, and be held by my aforesaid wife, if she shall be then living, so long as she shall live and remain a widow, and at her death or subsequent marriage, then I give and bequeath the same to my right heirs."

The testator left two children—a son and a daughter; after his death the daughter died in her minority, intestate. The widow, who is the complainant in this cause, renounced under the will, and elected to take according to law.

Richard D. Fenby and James Stirrat, the executors named in the will, qualified as such, returned an inventory and accounted with the Orphans' Court. On the 5th of August 1857, letters of administration were granted to the appellee on the estate of her deceased daughter, and on the 3d of December 1857, she was duly appointed and qualified as guardian of her son.  The bill in this cause was filed by her in her own right, as administratrix of the daughter, and as guardian of her son, charging "that by the true construction of the will, she is entitled as distributee to one-half of the personal estate of her daughter; and as widow and administratrix, to an account of the administration by the executors, and to an allowance as guardian for the support of her son; and the prayer of the bill is for an account, and for general relief."

The answer of the executors denied the jurisdiction of the Court, and alleged that they had accounted in the Orphans' Court; but admitted the material facts alleged in the bill.

The Circuit Court decreed that "an account should be taken, &c., and awarded to the appellee as administratrix of her daughter Emma Johnson, deceased, the one-third part of the personal estate of James Johnson, deceased, to be held and administered according to law." The Circuit Court in the opinion accompanying the decree, decided that the daughter took under the will a vested estate in fee, in the moiety of two-thirds of her father's estate, which, at her death, passed to her heirs and personal representatives, and not to her surviving brother by way of cross-remainder, by implication; and that consequently the appellee was entitled, as distributee, to one-half the personalty of her said daughter acquired under the will.

The account of the auditor being stated in conformity with the opinion and decree, exceptions were filed thereto, and this appeal.was taken from the decree.

An examination of the cases cited in argument, has led us to the conclusion that the construction put upon this

clause of the will by the judge of the Circuit Court, was correct.

In the opinion of this Court the children took under this devise as tenants in common in fee in the lands, and an absolute estate in the personalty, which vested upon the death of the testator; and the limitation over upon the contingency named in the will, was good as an executory devise. In such case the weight of authority, as well as of reason, is, that there is no implication of cross-remainders between the devisees, but in case of the death of one, the event which has actually happened, her estate devolved upon her heirs and personal representatives, subject however to be afterwards defeated by the happening of the contingency named in the will.

. The authorities cited in the opinion of the judge of the Circuit Court, and which may be found collected in *Jarman on Wills, vol. 2nd, ch.* 44, fully establish this conclusion.

An examination of all the cases cited in the argument, has satisfied us that the distinction between the cases of devises *in tail,* and *in fee,* as affecting the doctrine of cross-remainders by implication, which is so well expressed by the learned author in the beginning of the chapter referred to, is well established both on reason and authority; and we adopt the rule stated by him as applicable to the construction of the will before us. He says, on page 482, "If, therefore, a gift is made to several persons in fee-simple as tenants in common, with a limitation over in case they *all* die under age, the share of one of the devisees dying during minority will devolve upon his representatives, unless and until the whole die under age," and the same rule applies to a gift of an absolute interest in personalty.

On this subject we refer also to the able decision of Sir Wm. Grant, Master of the Rolls, in *Skey vs. Barnes,* 3 *Meriv.,* 335, which, in the language of Mr. Jarman, "may be considered to have fixed the rule of law on this important doctrine of testamentary construction."

The appellants have assigned as error in the decree, that it requires an account to be taken of the rents of the real estate received by them, on the ground that the bill does not charge that they have collected any rents, and also because as executors and trustees under the will they have nothing to do with the real estate.    We think the decree ought not to be reversed for this reason.    No objection was taken to the frame of the bill, and it contains a prayer for general relief.    It is true that under this prayer the complainants are not entitled to claim relief beyond the general scope and object of the bill.    As executors merely, the appellants would have nothing to do with the realty, and a decree against them for an account in reference thereto, would be erroneous; but in this case, they are entitled as trustees under the will, to receive the income of the estate devised to the children, both real and personal, for the purposes specified in the will, and, in that character, an account of rents of the realty received by them might properly be taken.

The record before us discloses the accounts actually taken by the auditor under the decree, and the appellants are charged therein only with the sum of $86.24, as ground-rents received by them since their account in the Orphans' Court.    This sum is designated in the auditor's account as ''Rents of real estate owned by James Johnson, deceased.'' It appears, however, that it was ground-rent received from H. Krager, according to the statement furnished to the auditor from the books of the appellants.    In their account previously passed in the Orphans' Court, they charge themselves with the same amount for ground-rent before received from Krager, as part of the personal assets in their hands.    It does not clearly appear whether this ground-rent was a part of the property taken by the executors from S. Fenby & Brother, in satisfaction of a debt due the testator, and which by the decree was ordered to be treated as personalty, or whether it was, as stated by the auditor in his account, ''of the real estate of James Johnson, de-

ceased." But in either event the appellants, both by their account passed in the Orphans' Court and by the statement furnished from their books to the auditor, admit themselves to be chargeable therewith.

The account of the auditor was not passed upon by the Circuit Court, it was excepted to by the appellants only on the ground that the sum awarded to the complainant as administratrix of her daughter, Emma Johnson, ought to have been awarded to the appellants as trustees of the surviving child, Jos. J. Johnson; the affirmance by this Court of the ruling below on the construction of the will, disposes of this exception, even if it were properly before us on this appeal.

The objection taken by the appellants to the jurisdiction of the Court in this case, seems to us to be conclusively answered by the decision in *Barnes vs. Compton*, 8 *Gill*, 391: "The power and jurisdiction of Courts of Equity to superintend the administration of assets, and decree distribution among legatees and distributees, is now well established."

*Decree affirmed and cause remanded.*

(Decided Feb'y 24th, 1864.)