# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 9, 1897.

GEORGE WHITELOCK, ET AL., RECEIVERS,

VS.

THE NATIONAL BANK OF COMMERCE.

*Schmucker & Whitelock, Richard B. Tippett & Bro.* and *A. Bernard Chancellor* for receivers.

*John C. King* and *John P. Poe* for defendant.

705

STOCKBRIDGE, J.—

In the summer of 1896 the Alfred Ely Company being involved financially and having made a deed of trust for the benefit of its creditors, an agreement was entered into for a settlement of its then existing indebtedness, notes of the concern were given in settlement therefor, and under an order of the Court the property was reconveyed by the trustees to the company. The first of the composition notes so given became due on the 30th of December, 1896, and the company not having sufficient money to meet them, on the 29th of December, 1896 borrowed of the National Bank of Commerce the sum of $3,000—and gave to the Bank of Commerce its three promissory notes for $1,000 each, payable in one, two and three months.

On the 31st of December, two days subsequent to this loan, a bill was filed in the Circuit Court by William J. Unverzagt, alleging the insolvency of the company, and praying the appointment of receivers. An answer was filed by the company denying its insolvency and resisting the placing of its affairs in the hands of receivers, and testimony was taken upon this issue, as well as others involved in that bill of complaint. While this was going on, the first of the notes given by the Alfred Ely Company to the bank, matured, and the company not being in a position to pay it, asked a renewal, tendering the assignment of certain contracts as security. This was accepted, and the note maturing January 29th, was renewed for a period of ten days, and upon the 4th day of February, 1897, the Alfred Ely Company executed an assignment to the bank of a number of contracts, and in this assignment the consideration is recited to be the renewal by the bank of the note for $1,000, maturing January 29, and the purpose of it was to secure the payment of all the notes.

Following this, on the 15th day of February, after argument, the Unverzagt bill of complaint was dismissed. Four days later a motion was made to strike out the decree of the 15th and for a re-hearing, in which motion the plaintiff receded from one of the positions which he had sought to occupy in his original bill, and on the same day that this motion was filed, the Court, by its order, struck out the original decree dismissing the bill and granted the re-hearing. Then, still on the same day, the 19th day of February, the Court signed a decree adjudicating the corporation insolvent, appointed receivers to close up its affairs, and decreed the corporation to be dissolved.

The present suit is one which is brought by the receivers so appointed to declare null and void the title to the assets attempted to be conveyed by the assignment of the 4th of February, and to decree that the same is vested in the plaintiffs as receivers. To state the question in a different form, the position of the plaintiffs is that the assignment of February 4th to the Bank of Commerce having been made within the period in which, had the assignor been a natural person subsequently adjudged an insolvent, it would have been void as an illegal preference, it is equally void, having been made by a corporation, under the provisions of Chapter 263 of the Acts of 1894 and Chapters 394 and 446 of the Acts of 1896. This has been resisted by the defendants upon the grounds:

First. That the decree of February 19th, declaring the corporation insolvent and dissolving it, went beyond what the prayer of the bill would warrant, in that it declared a dissolution.

Second. That the Unverzagt bill having been dismissed by the decree of the 15th, the rights of the bank under the assignment attached, whatever they may have been before, and could not be divested by the subsequent decree of the 19th, and

Third. That this was not an illegal preference, but a valid assignment for full and adequate consideration.

The case is one of unusual difficulty, one in which the natural equities and the law are difficult to reconcile, and therefore must be determined with an unusual degree of caution.

In so far as the defendant relies upon an attack upon the decree of February 19th, in the Unverzagt case the position is not tenable, because that decree, having been passed and become enrolled, and no appeal from it having been taken, it can not now be collaterally in-

quired into, but the adjudication of insolvency and the dissolution of the corporation embodied therein must be deemed a final determination. Nor would it materially help the defendant if it could so go behind this decree, because while the plaintiff's bill in the Unverzagt case did not in terms pray for the dissolution of the corporation, it did pray for the appointment of receivers, and the necessary effect of this was bound to be the dissolution of the corporation.

Mason vs. Equitable League, 77 Md. 484.

French Bank Case, 57 Cal. 495.

Union Mutual Life Ins. Co. vs. Union Plaster Mills, 37 Fed. Rep. 286.

While it is undoubtedly true as laid down in Fenby vs. Johnson, 21 Md. 106, that under the prayer for general relief a plaintiff is not entitled to claim relief beyond the general scope of his bill, yet in all such cases, it is upon the facts stated in the bill by which its efficiency to support a decree must be determined and not by the prayer or prayers of the bill.

Tomlinson vs. McKaig, 5 Gill 276.

Iron Hall vs. Baker, 20 L. R. A. 220.

Earle vs. Turton, 26 Md. 34.

Campbell vs. Lowe, 9 Md. 510.

The Unverzagt bill contained allegations of insolvency as against the corporation, an allegation which substantiated would have been a sufficient ground for the decreeing of the dissolution, and the omission of a specific prayer for this purpose will not therefore, while there is a prayer for general relief, be fatal to the sustaining of a decree which would so dissolve the corporation.

Second. It is too well settled to need any citation of authorities, that a Court of Equity retains entire jurisdiction to amend, modify or rescind its decrees from the time of their rendition until they become enrolled, a period of thirty days, and, therefore, it was perfectly competent for the Circuit Court to rescind the decree of February 15th, as it did on February 19th, and to pass a decree of very different purport. It is, of course, conceivable that there might be a cause in which parties, relying upon the faith of a decree which had been passed, did acts, assumed responsibilities, or incurred liabilities which, in the event of a subsequent modification of that decree, would give them an equitable standing in Court to object to such decree, but in such case that objection must be seasonably taken, and in the forum in which the substituted or amended decree was rendered, and not by an attack collaterally and in a different forum. But this case does not present any such equity. There is nothing so far as appears that the bank did which made its position different in any respect upon the 19th of February, from what it was on the 15th, and, therefore, the contention as to rights attaching by reason of the dismissal of the Unverzagt bill of February 15th, does not appear well founded.

Third. The sole question remaining, therefore, is was the assignment of February 4th from the Alfred Ely Company to the Bank of Commerce one fraudulent in law, and therefore one which should be set aside by this Court?

The insolvency of the Alfred Ely Company, so far as this litigation is concerned, was conclusively determined by the decree of the 19th of February, and the dissolution of the corporation was by the same decree in like manner settled. There is no question whatever that the assignment of these contracts was made within the period which under the insolvent law would render it prima facie void, if the insolvent had been a natural person, but the manifest purpose and intent of the Legislature in 1894 and 1896 in the passage of the acts already alluded to, was to make the transfers by corporations, which were insolvent in fact, or on the eve of insolvency, as directly amenable to the provisions of the insolvent law as a natural person would have been. The onus of proof therefor of establishing the validity of the assignment of February 4th rests upon the bank. Had the contracts in question been assigned to the bank on the 29th of December at the time when the loan was made, there would be no difficulty whatever in upholding and sustaining such transfer, but so far as appears there was at that time no thought or suggestion upon the part of any one of the assignment of these contracts or choses in action as collateral security for the

indebtedness then created. When, therefore, on the 4th of February following the Alfred Ely Company executed, and the bank took, the assignment to secure the notes which were to fall due on February 28 and March 28, it was receiving that which the law declares an illegal preference and a preference which, being illegal, was fraudulent, and therefore upon the application of the receivers must be declared void. With regard to the other note, it must be observed that the note matured on the 29th of January and on that day appears to have been renewed for a period of ten days by the bank. There had been six days previous to this, namely on the 23rd of January, the offer of the Alfred Ely Company to execute the assignment as an inducement for renewal and acceptance of the offer, but it nowhere affirmatively appears that the bank would have refused to renew the notes but for the assignment, and the assignment, in fact, was not made until the 4th of February, or five days later than the maturity of the original note, and was not, therefore, a contemporaneous transaction with the renewal, and the fact that the security was tendered by the Ely Company as an inducement to secure their renewal, and accepted by the bank, does not, and cannot, change the fraudulent character of the assignment upon the part of the Alfred Ely Company.

The only case cited by the learned counsel for the Bank in opposition to this view was that of the County of Warren vs. Marcy, 97 U. S. 96, with regard to which, however, it is to be observed that such eminent jurists as Justices Miller, Field and Harlan dissented from the opinion of the majority of the Court, and it does not clearly appear in that case that the county bonds which were held valid reached the hands of the purchasers except for cash value contemporaneous with the issuing of the bonds.

I am therefore constrained to hold that the plaintiffs are entitled to the relief prayed in the second prayer of their bill, and that the assignment of February 4th, 1897, from the Alfred Ely Company to the National Bank of Commerce is null and void, and that the title to the assets thereby attempted to be conveyed is vested in the plaintiffs, as receivers.