THOMAS C. BASSHOR and WALLACE STEBBINS *vs.*
WERNER DRESSEL.

*Corporations—Defect in a Certificate of Incorpora-*
*tion cured by a Legislative recognition of the Cor-*
*poration—Construction of section 68 of Article 26*
*of the Code—Capital stock of Mining Corpora-*
*tions.*

Certain persons desiring to form a company under the provisions of Article
26 of the Code, for the purpose of mining chrome ores and manufactu-
ring bi-chromates and other salts, executed a certificate of incorporation,
by which they acknowledged that they had associated themselves for
such purpose, and that the name of the incorporation should be "The
Baltimore Chrome Mining and Manufacturing Company." This cer-
tificate was duly recorded in the office of the clerk of the Superior
Court. Subsequently, the company applied to the Legislature for an
amendment of its charter, and the Act of 1867, ch. 382. entitled "An
Act to amend the charter of the Baltimore Chrome Mining and Manu-
facturing Company, by empowering the said company to increase its
capital stock, or to make calls or assessments upon the present capital
stock," was passed for that purpose. This Act was accepted by the com-
pany In an action by creditors of this company against a stockholder,
to enforce his personal liability for the debt under section 52 of Article
26 of the Code, the defendant denied the existence of the company,
charging that the certificate of incorporation was not valid, because of
its attempted combination of a *mining* with a *manufacturing* company.
On an appeal by the plaintiffs from a judgment in favor of the defend-
ant, it was HELD:

That the Act of 1867, ch. 382, was a legislative recognition of the validity
of the existing corporation, and cured the defect, if any such existed, in
the original certificate, of combining the two kinds of corporations in
one charter. By accepting this Act, the corporation, as to any such
defect, became valid *ab initio.*

The provision of the Code (Article 26, section 68,) which allows *lands* as
well as money, to be considered as payment of any part of the capital
stock of mining corporations, does not authorize *leasehold interests* to be
considered as payment in full of such capital stock, so as to exempt the
stockholders from personal liability under section 52 of Article 26 of the
Code.

Basshor and Stebbins *vs.* Dressel.

APPEAL from the Superior Court of Baltimore City.

This was an action brought by the appellants, creditors of a corporation known as "The Baltimore Chrome Mining and Manufacturing Company," against the appellee, a stockholder therein, to charge him for the debt due by the company under the provisions of section 52 of Article 26 of the Code of Public General Laws. Judgment was rendered for the defendant and the plaintiffs appealed.

The cause was argued before STEWART, MAULSBY, GRASON, MILLER and ALVEY, J.

*Thomas Rowland* and *John Thomson Mason,* for the appellants.

The Court below erred in instructing the jury that there was no legal evidence of the incorporation of The Baltimore Chrome Mining and Manufacturing Company, and the plaintiffs were, therefore, not entitled to recover in this action.

The certificate of incorporation is not defective. It contains all the requisites prescribed by section 40 of Article 26 of the Code, as necessary to constitute a manufacturing corporation. It was in this character that the company dealt with the plaintiffs. Whatever more the certificate contained may be rejected as surplusage. *Code of Pub. Gen'l Laws, Art.* 26, *sec.* 40 ; *Eastern Plank Road Co. vs. Vaughn,* 14 *New York,* 516.

There is no reason why the business of mining and manufacturing should not be carried on by the same company. The Code does not prohibit it, but rather, by implication, permits it. In fact, every mining company does do a manufacturing business in preparing its ores for the market. It was only to this extent that the company in question proposed to engage in manufacturing. The difference between the " mining of chrome ores " and the " manufacturing of bichromates and other salts," is not nearly so great as that between different kinds of manufacturing.

If these two operations should require the formation of two different companies, it would be difficult to define exactly where the operations of the mining company should terminate, and those of the manufacturing company should begin. *Code, Art.* 26, *secs.* 40, 68; *Neale vs. The Vestry of St. Paul's Church,* 8 *Gill,* 116; *Bird vs. Daggett,* 97 *Mass.,* 494.

A substantial compliance with the requirements of section 40 is sufficient; even if those provisions are not to be considered as directory rather than fundamental. *Angell & Ames on Corporations,* sec. 92; *Abbott's Digest of the Law of Corporations,* 24; *Eakright vs. Logansport & N. I. R. R. Co.,* 13 *Ind.,* 404; *Rogers vs. Danby Un. Soc.,* 19 *Vt.,* 187; *Mead vs. Keeler,* 24 *Barbour,* 24; *Spring Valley Water Works vs. San Francisco,* 22 *Cal.,* 440; *Hawes vs. A. S. Petroleum Co.,* 101 *Mass.,* 394; *Merrick vs. R. E. & G. Co.,* 101 *Mass.,* 381; *Gen. Stats of Mass.,* (1860,) *ch.* 61, *secs.* 1, 8; *State vs. Brown,* 31 *N. J.,* (*Law,*) 357.

If there has been a *user* of a corporate franchise by an association of persons, their existence as a corporation can only be inquired into by the State; it cannot be questioned in a collateral proceeding. *Angell & Ames on Corporations,* secs. 94, 635; *M. E. U. Church vs. Pickett,* 19 *N. Y.,* 482; *Buffalo & A. R. R. Co. vs. Cary,* 26 *N. Y.,* 75; *Eaton vs. Aspinwall,* 19 *N. Y.,* 119; *Abbott vs. Aspinwall,* 26 *Barb.,* 202; *Cochran vs. Arnold,* 58 *Penn.,* 399; *Tarbell vs. Page,* 24 *Ill.,* 46; *Baker vs. Adm'r of Backus,* 32 *Ill.,* 81; *State vs. Brown,* 31 *N. J.,* (*Law,*) 357.

One who has participated in the acts of *user* of a corporation *de facto,* subscribed to its capital stock and acted as an officer of the corporation, is estopped from denying that it has ever existed.

A creditor dealing with a corporation formed under the provisions of Article 26, looks to the individual as well as the corporate liability. To permit a stockholder and officer of a company, holding itself out to the world as a corporation formed under the provisions of Article 26, to contract debts

in its behalf, and then repudiate them because of some formal defect *in his own certificate*, would seem to be utterly inconsistent with any reasonable idea of justice. It is certainly a violation of those principles of truth and equity which have given rise to the doctrine of estoppel *in pais*. *Angell & Ames on Corporations*, secs. 94, 611, 630 *a*, 635; *Abbott vs. Aspinwall*, 26 *Barb.*, 202; *Eaton vs. Aspinwall*, 19 *N. Y.*, 119; *Mead vs. Keeler*, 24 *Barb.*, 20; *Callender vs. P. & H. R. R. Co.*, 11 *Ohio*, 516; *West Winsted Association vs. Ford*, 27 *Conn.*, 289; *Tarbell vs. Page*, 24 *Illinois*, 46; *McHose vs. Wheeler*, 45 *Penn.*, 32; *Smith vs. Heidecker*, 39 *Mo*, 162; *Dooley vs. Cheshire Glass Co.*, 15 *Gray*, 494; *McDougall vs. Lane*, 18 *Ga.*, 444; *Neal vs. Vestry of St. Paul's Church*, 8 *Gill*, 116, 119.

According to the true construction of Article 26, this company would not have attained a full corporate character, in any event, until the requirements of section 52 were complied with. Until the capital stock is fully paid up, the liability of the stockholders is that of partners at common law, except so far as is it modified and limited by the statute; and is not dependent upon the validity of the incorporation. *Angell & Ames on Corporations*, sec. 611; *Matthews vs. Albert*, 24 *Md.*, 535, 537; *Corning vs. McCullough*, 1 *N. Y.*, 47 53, 60; *Moss vs. Oakley*, 2 *Hill*, 265, 269; *Abbott vs. Aspinwall*, 26 *Barb.*, 207; *Conant vs. Van Schaick*, 24 *Barb.*, 87, 96; *Hawthorne vs. Calef*, 2 *Wall.*, 22; *Paine vs. Stewart*, 33 *Conn.*, 529.

*Charles Marshall*, for the appellee.

It is competent for a party when sued as a stockholder of an alleged corporation, to deny its legal existence. The liability is one created by statute, and exists only as to stockholders of a corporation created according to law.

Upon principle, there should be no estoppel, because the denial of the validity of the Act of incorporation works no wrong to the creditor, inasmuch as the liability of the defendant, in case the corporation had no existence, is unlimited,

whereas if he be a stockholder of a legal corporation, his liability is limited to the amount of his stock. The defendant, may contest the existence of the corporation, *for the neglect or violation of any condition precedent to a valid corporate existence*, or because there is no warrant in the law for the creation of such a corporation. *Utley vs. Union Tool Company*, 11 *Gray*, 140; *Franklin Fire Ins. Co. vs. Hart*, 31 *Md.*, 59; *Frostburg C. & I. Co. vs. Frost*, 24 *How.*, 283; *Harrison vs. McGregor*, 29 *Cal.*, 126; *Spencer, Field & Co. vs. Paul Cook*, 16 *La. An.*, 153; *Crocker vs. Crane*, 21 *Wend.*, 220; *Mokalumne Hill M. Co. vs. Woodberry*, 14 *Cal.*, 424; *Dauchy vs. Brown*, 24 *Vermont*, 197; 1 *Redfield on Railways*, 64, *ch.* 4, *section* 18.

The proof in this case shows that there never was a legal corporation known as "The Baltimore Chrome Mining and Manufacturing Company."

The Code, Article 26, section 40 to section 67, inclusive, provides for the incorporation of manufacturing companies, and section 68 to 87 inclusive, of the same Article, provide for the incorporation of mining companies. The certificate offered in evidence, purports to combine in one corporation both a manufacturing and a mining company. There is no provision in the Code which permits such an amalgamation of the two kinds of corporations, on the contrary, it will be seen upon examination of the powers and duties of each, that they are repugnant and inconsistent in many essential particulars. The Act of 1868, ch. 481, sections 35 and 36 provide for the incorporation of companies for two or more of the purposes named in the Act, and for the amalgamation of two or more of these companies after incorporation. The absence of such a provision in the law under which the corporation in question was attempted to be formed, becomes for this reason very significant. Without authority of law, it was as much beyond the power of the parties to unite two statutory corporations in one, as it would have been to incorporate a company for a single purpose not permitted by the law. *Angell*

*& Ames on Corporations, sec.* 111; 1 *Redfield on Railways,*
*ch.* 4, *sec.* 18, *p.* 64.

Two existing legal corporations cannot amalgamate so as to
form a single corporation combining the purposes of both,
even with the consent of every stockholder, without express
legal sanction. *State vs. Bailey,* 16 *Ind.,* 46. If this be true,
an amalgamation of corporations, formed under special laws,
must have express legislative sanction.

The differences between the two kinds of corporations,
which a brief examination of the powers conferred upon each,
and denied to each, would disclose, show conclusively that the
attempt to amalgamate, not only was *without legal authority*,
but that it was *contrary to law*.

The proof of the fact of a legal incorporation in this case
was radically defective, and did not show the existence of any
corporation recognized by law. If this be correct, there can
be no statutory liability.

MILLER, J., delivered the opinion of the Court.

This is another case where creditors of a corporation are
seeking to enforce as against a stockholder, the personal lia-
bility imposed by section 52 of Article 26 of the Code. None
of the questions determined in *Norris vs. Johnson,* and *Norris
vs. Wrenschall,* arise here. The case was concluded in the
Court below by an instruction to the jury that there was no
legal evidence of the incorporation of the company of which
the defendant is sought to be charged as a stockholder, and
the plaintiffs are not, therefore, entitled to recover in this ac-
tion, and whether this instruction be correct is the main ques-
tion in this case.

The certificate of incorporation, dated the 11th of October,
1866, professes on its face to form a company for the purpose
of *mining* chrome ores and *manufacturing* bi-chromates and
other salts, under the name of "The Baltimore Chrome
Mining and Manufacturing Company," and provides that
the *mining operations* of the company shall be conducted in

Harford county and other counties of the State, and its *manufacturing operations* and generally all the business of the company shall be conducted in the city of Baltimore, in which its office for the transaction of business will be situated. On the part of the appellee, it is contended that this is an attempt to create a company, both for *mining* and *manufacturing* purposes, for which no provision is made by the Code : that these several kinds of corporations are provided for by different sections, are in many essential features totally dissimilar, and parties have no power without legislative sanction to amalgamate the two in one certificate : that this is a radical defect in the organization of this company, just as fatal to its corporate existence as if the attempt had been to incorporate it for a purpose not permitted by law : that the right of recovery against a stockholder depends upon the fact that the plaintiff was a creditor of the corporation of which the defendant was at the time a stockholder, and hence the plaintiff must show the existence of the corporation of which he became a creditor : and that on this issue it is competent for the defendant to contest the legal existence of the corporation by reason of neglect or violation of any condition precedent to a valid corporate existence, or because there is no warrant in the law for the creation of such a corporation. On the other hand, the appellants insist, *first,* that there is no defect in the certificate, that it contains all the prescribed requisites necessary to constitute a manufacturing corporation, and whatever more there is in it may be rejected as surplusage, especially in view of the facts that the certificate was recorded in Baltimore city only, and no attempt made to organize a mining company by having it recorded in Harford county, or elsewhere, that the corporation did carry on a manufacturing business in the city of Baltimore, for at least a year and a-half, and its debt to the appellants for machinery to be used in that business was there contracted : *secondly,* that where there has been such *user* of corporate franchises by an association of individuals, their existence as a corporation can only be inquired into by the State,

and cannot be questioned in a collateral proceeding like the present between a creditor and a stockholder: and *thirdly*, that the appellee, who was one of the originators of the company, a subscriber to its stock, a signer of the certificate of incorporation, and who acted as one of its directors from its organization until it stopped business, and was present at the meeting of the board at which the settlement of the appellants' claim was unanimously authorized, is estopped by these acts of active participation in the *user* of a corporation *de facto*, from denying .it had ever existed, and to permit him now to repudiate the existence of the corporation which he was thus instrumental in creating, conducting and holding out to the world as a corporation and capable of contracting debts as such, and escape the liability of a stockholder therein, would be inconsistent with any reasonable idea of justice, and in violation of those principles of truth and equity on which the doctrine of estoppels *in pais* is founded.

These conflicting views have been strongly urged in argument, and a large number of authorities cited and pressed upon our attention, but we are relieved from the duty of expressing any opinion upon them, because, in our judgment, this case does not rest upon the positions stated by the appellants' counsel.   We are convinced that any defects, whether vital or formal, that may have existed in the original certificate of incorporation, because of its attempted combination of a mining with a manufacturing company, have been cured by competent authority.   The record shows that the defendant offered in evidence the minutes of proceedings of this company contained in a book which it was agreed should be used in this Court, and as we understand the offer, it embraces all the proceedings in that book that are relevant to the matters in controversy between the parties to this suit.   An examination of that book has disclosed the facts that the company applied to the Legislature for an amendment of its charter, and a *special law*, (*Act of* 1867, *ch.* 382,) for that purpose was passed, which, on motion of the appellee, was accepted, and is

set out in full on the minutes of proceeding. That law, entitled " An Act to amend the charter of the Baltimore Chrome Mining and Manufacturing Company, by empowering the said company to increase its capital stock, or to make calls or assessments upon the present capital stock," amongst other things, empowers *that corporation* to increase its capital stock to the sum of $750,000, and if that shall not be done, then to make calls or assessments upon its present capital stock to the amount of $1 on each share. We regard this Act as a legislative recognition of the validity of the existing corporation, and as having the effect to cure the defect, if any such existed, in the original certificate, of combining the two kinds of corporations in one charter. By accepting this Act, the corporation, as to any such defect, became valid *ab initio,* as much so as if incorporated under the law of 1868, ch. 471, section 35. With the proof of this law and its acceptance in the case, there was error in the instruction granted by the Court, and for this reason the judgment must be reversed.

The only other question material to be considered is, whether there is any sufficient evidence to authorize the jury to find that the capital stock had all been paid up. The certificate fixes the capital stock at $500,000, divided into one hundred thousand shares of $5 each. In reference to manufacturing corporations, the law provides that nothing but money shall be considered as payment of any part of the capital stock. There is no proof and no pretence that this provision has been complied with. In the case of mining corporations, the law allows *lands,* as well as *money,* to be considered as payment, but that does not authorize *leasehold* interests, of which the greater part of this property consisted, to be considered as payment in full of the capital stock, so as to exempt the stockholders from personal liability under section 52. And even if all the property had consisted of fee-simple estates in lands, we should be very unwilling to decide that such property, whose actual value, ascertained beforehand by public sale, was certainly less than $50,000, could,

by any arrangement or agreement between the stockholders, be taken to be worth $500,000, so as to constitute payment in full, under this section, of stock to that amount. We are fully satisfied there is no proof in this record of compliance with the statutory provision, by observance of which, exemption from personal liability is secured to the stockholders.

These views dispose of all the material questions that will probably arise in the further progress of this case, and we are therefore relieved from the necessity of deciding in detail, upon the large number of prayers offered by the appellants and rejected by the Court.

*Judgment reversed and*
*new trial awarded.*

(Decided 20th June, 1871.)