## BALTIMORE CITY COURT.

Filed March 18, 1919.

WILLIAM F. BROENING, STATE'S ATTORNEY OF BALTIMORE CITY,
VS.
THE MAYOR AND CITY COUNCIL OF BALTIMORE.

THOMAS F. McNULTY, SHERIFF OF BALTIMORE CITY,
VS.
SAME.

SAM W. PATTISON, CLERK OF THE CRIMINAL COURT OF BALTIMORE CITY,
VS.
SAME.

*Albert C. Ritchie,* Attorney General, *Ogle Marbury* and *Philip B. Perlman,* Assistant Attorneys General, for State.

*S. S. Field,* City Solicitor, for the Mayor and City Council of Baltimore.

DUFFY, J.—

The fee system was not new when the Constitution of 1851 became law, and for the purposes of this case we need not go farther back than that. From that time on the practice has remained unchanged. The State's Attorney has charged the city $10 for each felony, or misdemeanor, for which imprisonment in the Penitentiary may be imposed, and $5 for each misdemeanor in which the penalty is a fine or imprisonment in jail or House of Correction. These fees have been so charged at the end of the month in which the cases have been disposed of by trial, stet or non pros., and have been paid by the city, except, of course, in those cases where the costs have been paid by the traverser.

The city now takes the stand that it is willing to pay the State's Attorney enough money to enable him to conduct his office, but is not willing to pay any more than that. If the new position of the city is sound, it necessarily follows that the city can question the payments of the State's Attorney which he claims to be proper expenses of his office. For instance, it can refuse to pay for extraordinary expenses which the State's Attorney deems necessary in prosecuting an important case. If the city has a right to refuse to pay over any money which would be a surplus, it must follow that it can limit the State's Attorney to a certain sum to pay salaries and such office expenses as it approves of. While the city is willing to furnish the State's Attorney with enough money to administer his office (and no one can question the good faith of the city in this matter), it also claims that it is not bound to pay any fees not authorized by statute. Now the only statute directing the city to pay costs is Section 7, Article 24, of Code, which applies to costs in cases where the traverser is acquitted or fined not over 15 cents. The fees from all of these cases will aggregate an adequate amount in the course of a year to pay for administration of the office.

It thus appears that the largest part or at any rate an important part of the money necessary to administer the office the city can refuse to pay if its contention is sound. This would seem to be remarkable when we consider that by the Constitution of 1851, 1864 and 1867 the State's Attorney in the proper administration of his office is made independent of any State or municipal officer.

The Constitution of 1867, Article 5, Section 9, provides that the State's Attorney shall receive such fees and commissions as are now or may hereafter be prescribed by law. The correspond-

ing provisions of the Constitutions of 1851 and 1864 are substantially the same. This language clearly indicates that these three constitutional conventions either thought the fees then allowed by law would be adequate to pay for the administration of the State's Attorney's office, or intended that they should be made adequate by appropriate legislation.

But even if there is no statute directing the city to pay fees to the State's Attorney in accordance with the practice from 1851 on, except Article 24, Section 7, can it be that there is no warrant in law for this practice?

The Constitution of 1867, Chapter 15, Section 1, provides:

"Section 1. Every person holding any office created by, or existing, under the Constitution, or laws of the State (except justices of the peace, constables and coroners), or holding any appointment under any court of this State, whose pay or compensation is derived from fees or moneys coming into his hands for the discharge of his official duties, or in any way growing out of or connected with his office, shall keep a book in which shall be entered every sum or sums of money received by him, or on his account, as a payment or compensation for his performance of official duties, a copy of which entries in said book, verified by the oath of the officer by whom it is directed to be kept, shall be returned yearly to the Comptroller of the State for his inspection, and that of the General Assembly of the State, to which the Comptroller shall, at each regular session thereof, make a report showing what officers have complied with this section; and each of the said officers, when the amount received by him for the year shall exceed the sum which he is by law entitled to retain as his salary or compensation for the discharge of his duties, and for the expenses of his office, shall yearly pay over to the Treasurer of the State the amount of such excess, subject to such disposition thereof as the General Assembly may direct."

The corresponding provisions of the Constitutions of 1851 and 1864, though not so specific, are broad enough to make them equivalent to the above quotation, so far as the question involved in this case is concerned.

It thus appears that the State's At-

torney must annually report to the Comptroller his receipts and pay the excess fees to the Treasurer that such reports must be submitted to the Legislature, and that the excess fees shall be subject to such disposition as the Legislature may direct.

These reports have been regularly made by the State's Attorney, and the excess fees must have been appropriated by the Legislature either specifically or as a part of the annual budget. A specific appropriation of part of the excess fees of the clerks will be found in Charter, Sections 370 and 371, providing for making up the deficit of one clerk's revenue out of the excess fees of the others, and for paying the salary of the trust clerk out of these excess fees.

When we consider that the city is a political subdivision of the State, and that the excess fees are public funds taken from the City Treasury, and finally deposited in the State Treasury, subject to disposition by the Legislature, and that the Legislature has disposed of them in part by Sections 370 and 371 of the Charter, and does dispose of them in part by the appropriation bill, this amounts to a legislative recognition of the long established practice concerning the payment of fees to the State's Attorney and the clerks, which has or ought to have as much force as a specific statute on the subject.

Light will be thrown on the question by considering the principles involved in the following cases:

Legislative recognition of the defective charter of a corporation. 34 Md. 511, Basshor vs. Dressell; 113 Md. 224, Munich Ins. Co. vs. United Surety Co.

Interpretation and construction of a statute by the Legislature and departments of the government acquiesced in by the people. 15 Md. 458, Mayor, &c., vs. State.

Forty-two years of acquiescence by the people of the State in an interpretation of a provision of the Constitution by the General Assembly concerning appointment of justices of the peace. 118 Md. 641, Levin vs. Hewes.

The affirmance by the court of the construction of a statute providing for taxation of bank deposits put upon said

statutes by the taxing authorities and acquiesced in for twenty years. 132 Md. 623, Baltimore vs. Machen.

In Somerset Co. vs. Pocomoke Bridge Co., 109 Md. 8, cited by the City Solicitor, the county had for many years paid $600 annually to the company, which payment of course enured to the benefit of its stockholders, under a section of the statute, which the court in that case declared unconstitutional. "Long acquiescence by the county," it was said by the court, "in paying this amount for so many years can not estop the present County Commissioners from raising the question." Acquiescence, laches and limitations can not be invoked against the public interest in favor of a private person or corporation. In this lies the distinction between this case and the case at bar.

The suit is properly brought by the State's Attorney, and the declaration is good.

Demurrer to third plea sustained.

The same action will be taken in the cases of the Sheriff and the Clerk.