HENRY A. LYON v. THE BOARD OF FIRE COMMISSIONERS OF THE CITY OF NEWARK.

ALEXANDER JOHNSON v. THE SAME.

1. The Tenure of Office act of March 24th, 1885 (*Rev. Sup.*, *p.* 691), was not repealed by the act of May 2d, 1885, removing the fire and police departments from political control. *Rev. Sup.*, *p.* 517.
2. Members of the Newark fire department who, for convenience, are designated as "call members" or "firemen at call," are firemen or men employed in the fire department of the city within the meaning of the acts of March 24th and May 2d, 1885, and are not removable except for cause and after a hearing, upon notice.
3. The powers delegated to the board of fire commissioners by the acts above mentioned will justify the consolidation of the force of the department and placing its entire membership on the same footing with respect to the duties to be performed by all persons who constitute the membership, but will not justify the dismissal of a certain class of members in a body.

On *certiorari* to review a resolution of the board of fire ·commissioners dismissing the plaintiffs from service as firemen.

Lyon and Johnson were "call members" of the fire depart-·ment of the city when the board of fire commissioners was ·organized. Johnson was also an honorably discharged Union ·soldier.

The only cause or ground for their dismissal is that set forth in the notice received by them bearing date the 23d day ·of May, 1889, of which the following is a copy:

" On and after June 1st, 1889, your services as a call member of this department will be no longer required, in consequence of the abolishment of the call system and the introduction of full paid permanent department. By order of the commissioners."

At the same time seventy-five " call members " were dismissed and forty-one " paid permanent members " were appointed.

Argued at June Term, 1890, before Justices DEPUE and VAN SYCKEL.

For the plaintiffs in *certiorari, Joseph A. Beecher.*

*Contra, Joseph Coult.*

The opinion of the court was delivered by

DEPUE, J. By an act entitled "An act respecting the fire departments of cities and regulating the tenure and terms of office of officers and men employed in said fire departments," passed March 24th, 1885, commonly known as the " Tenure of Office act," it was provided that the officers and men employed in the fire department of any city should severally hold their offices and continue in their employments during good behavior, except where the term of office or employment is determined and fixed by statute, and the removal or discharge of any such officer or employe was prohibited for any cause other than incapacity, misconduct, non-residence or disobedience of rules or regulations, &c., and then only after a hearing upon written charges and notice, &c. *Rev. Sup., p.* 691.

At the same session of the legislature, on the 2d of May, 1885, another act was passed, entitled "An act to remove the fire and police departments in the cities of this state from political control," which created in cities which should accept its provisions a board of fire commissioners, consisting of four

members, two of whom should be from each of the political parties casting the greatest number of votes at the last preceding municipal election, to be nominated and appointed by the mayor, with the advice and consent of the common council. *Rev. Sup., p.* 517.

The act of May 2d was accepted by the city of Newark by a popular vote; commissioners were appointed in January, 1886, and the board organized on February 4th, 1886.

Immediately upon its organization the board adopted a resolution "that all the officers, members and employes of the fire department at the present time be accepted as temporary employes of this commission." By a resolution of March 9th, "rules and regulations for the Newark fire department" were adopted. The first section declared that the fire department should consist of certain officers and members, among which are mentioned "call hosemen and laddermen;" and in section 11, under the head of "call hosemen and laddermen," the duties of these persons were prescribed as follows: "The call men of the several companies shall, upon an alarm of fire from the section of the city to which they are assigned duty, proceed promptly to the place of the fire in an orderly manner and perform any duty that may be required of them. They shall remain on duty until relieved by orders, which shall be given only by the officer in command."

By general rules adopted at that meeting, it was ordained that "all permanent and call men will be regarded as part of the working force, and may be used by the officer in command at fires as the circumstances of the service require;" and also, that "firemen at call will be required to attend every fire or alarm of fire in their respective districts; any officer or member absent, except in case of sickness or death in the family, will be fined the sum of one dollar. Absence from the city or business engagements will be no excuse except by order of the board." A resolution was also adopted that the "call men" should thereafter be paid quarterly.

The department continued on this footing under the administration of the board until May 7th, 1889, when a resolution

was adopted that the call system be abolished, and at a subsequent meeting, held on the 21st of May, a resolution was adopted dismissing the call members from the department. These writs of *certiorari* bring up these two resolutions.

The act of May 2d did not create a fire department in cities accepting its provisions. It simply "created and established a board of fire commissioners to whom should be entrusted the government, control and management of the fire department and the direction and control of public fire matters." The title of the act expresses an object which pertains to the regulation, and not the establishment of a fire department. Neither under the title nor within the purview of the act was it within the power of the commissioners to establish anew a fire department. When the act took effect the city of Newark, under its charter, had a fire department under the control of the common council, with an organization and membership established by ordinances in conformity with the city charter. The powers conferred upon these commissioners—"to employ such persons as may be deemed necessary from time to time;" "to declare vacant all or any of the offices or positions therein or thereunder as to said board may appear best for the public interests;" "to make from time to time such by-laws, rules and regulations for the government of such board and for the conduct and management of the affairs of such board and the department under its control as to the members of such board shall seem proper;" "to designate, appoint or approve all the firemen or other persons employed in the fire department;" "to suspend or discharge any person employed or appointed in or under the department under the control of such board"— are powers such as the common council previously possessed under the city charter. The scope and purpose of the act was to substitute a board of commissioners in the place of the common council, and to take the management and control of that department of city affairs from the common council, which was a political body, and lodge it in a non-partisan board, in order to remove it "from political control." The repeal by this act of all inconsistent legislation did not extin-

guish the fire department then established in the city. The repealer operated only to supersede the powers of the common council in the management and control of the department.

Originally the fire department of the city was a purely volunteer service. Subsequently certain of its members were detailed for continuous service—to care for the engines and their equipments and to be on hand at the engine houses ready to proceed with the engines to fires; others pursued their ordinary occupations and were required to report for duty at the fires when an alarm of fire was given. These persons, in the mode of appointment, the tenure of office and the character of service required, were equally members of the fire department. Each individual was alike subject to the rules and regulations of the department, and under like penalties for neglect of duty; each was paid for services a compensation graduated by the amount of service required. These were matters that were regulated by city ordinances. For convenience of designation members were classified as "permanent" and as "call members" or "firemen at call;" but so far as continuity of employment was concerned, all members were equally "permanent;" they all remained members, subject to the discipline and under the direction of the officers of the department, until their membership was terminated by discharge or dismissal from the service. That these persons were "firemen and men employed by municipal authority in the fire department of the city," within the meaning of the acts of March 24th and May 2d, is indisputable. In *Van Alst* v. *Jersey City,* 20 *Vroom* 156, this court held that a clerk of the board of fire commissioners was an employe within the meaning of the act of March 24th, and protected from removal by that act.

The act of March 24th, which regulated the tenure and terms of office of officers and men employed in fire departments, was not repealed by the act of May 2d. The act of March 24th prescribes the grounds on which removals may be made, and the act of May 2d interdicts removals at the discretion of the commissioners except on good cause shown, after an

investigation by the board. The right conferred by this legislation is a personal right secured to each member to continue in office or employment during good behavior, unless removed for one of the designated causes after investigation. On a proceeding to remove a member he is entitled to notice and a hearing. *Haight* v. *Love,* 10 *Vroom* 14, 476 ; *Ayers* v. *Newark,* 20 *Id.* 170.

The second section of the Tenure of Office act of March 24th makes it lawful, for the better government and discipline of the fire department, for the municipal authorities whose duty it was or might thereafter become to provide for, regulate or manage the fire department of the city, to prescribe and establish just rules and regulations respecting said department. The act of May 2d entrusts the government, control and management of the department to the board of commissioners, and empowers the board from time to time to make such rules and regulations for the conduct and management of the department under its control as to the members of the board shall seem proper, and also to fix and regulate the compensation of all officers and employes of the department. Under the powers granted of control, regulation and management, it was competent for the board to prescribe the duties to be performed by the members respectively—to remodel and reconstruct the organization of the force, to increase its efficiency and adapt it to the need of the city for an efficient fire department. Acts of regulation of this character are within the authority delegated to the board under whose control members and the department to which they belong are placed. The powers delegated to the board will justify the consolidation of the force of the department and placing its entire membership on the same footing with respect to the duties to be performed by all persons who constitute the membership. The rights secured to members personally do not prohibit such acts of regulation or control if done in good faith and from no indirect purpose with a view to infringe upon or evade the personal rights secured by this legislation.

Under the powers conferred it was within the competency of the board to place the entire department on the same basis as to the duties that should be required of the members respectively. The assignment of members to duty according to the requirements of the service, as to the board might appear best for public interests, would be a reasonable and just regulation. In *McManus* v. *Newark*, 20 *Vroom* 175, this court held that the change of a member of the police force from detective to patrolman was not, within the terms of similar acts, restraining the right of removal of policemen from office or employment. In the reorganization of the department the board might require call members to report and perform duties and render the services which were required of their fellow members who are designated as "permanent" members. If that had been the import and scope of the official action complained of, the complaint would have been without legal justification. The official act complained of is, that those of the members who were assigned under the call system were arbitrarily dismissed from the service without cause and without a hearing, and new members appointed on the force. The dismissal of these members in a body was not necessary to effect the change of service contemplated.

Justification for the action of the board is sought to be found in the fact that the board, at its organization, accepted the officers and employes then in the department as temporary employes. As has already been said, the fire department of the city was in existence when the board was created. Members of the department were members before the board came into existence, and were protected from removal by the act of March 24th. The continuance of their membership did not depend upon any action of the board. But if it should be that the board was authorized to establish a new fire department for the city, the form of this resolution will not avail. The resolution was passed February 4th, 1886. From that date until May 7th, 1889, the old force was recognized, disciplined and treated in every respect as actual members of the force, and as such dismissed from the department. Assuming

that the form of the resolution admits of dismissal at the pleasure of the board, the act of 1885 comes in and determines the tenure for which such persons shall hold, and the method by which alone they may be dismissed.

It may also be observed that Johnson, one of the plaintiffs in *certiorari*, is an honorably discharged Union soldier, and as such is within the provisions of the "Act in regard to honorably discharged Union soldiers," approved March 6th, 1888. *Pamph. L., p.* 135 ; *Lewis* v. *Jersey City*, 22 *Vroom* 240.

As in favor of both the plaintiffs in *certiorari*, the resolution of dismissal should be set aside.