THE STATE, EX REL. THE BOARD OF FIRE COMMISSIONERS OF THE CITY OF TRENTON, v. THE COMMON COUNCIL OF THE CITY OF TRENTON.

1. The act entitled "A supplement to an act entitled 'An act to enable cities and municipalities of this state to create and maintain a paid fire department,'" approved March 1st, 1886, which was approved March 18th, 1891 (*Pamph. L., p.* 180)—*Held,* to be within the prohibition of that part of article IV., section 7, paragraph 4 of the constitution, which provides that "no law shall be * * * amended by reference to its title only, but * * * the section or sections amended shall be inserted at length."

2. When the legislature, in order to express its will, resorts to amendatory legislation, it must be made to conform to the express requirements of the constitution in this respect, although the same effect might be produced by enactments not amendatory but independent.

On rule to show cause why *mandamus* should not issue.

Argued at June Term, 1891, before Justices SCUDDER and MAGIE.

For the relators, *William M. Lanning.*

For the defendants, *John Rellstab.*

The opinion of the court was delivered by

MAGIE, J.   This rule has been brought to hearing on a statement of facts agreed on by the respective attorneys.

It thereby appears that the board of fire commissioners appointed in the city of Trenton under the provisions of the act entitled "An act to remove the fire and police departments in the cities of this state from political control," approved May 2d, 1885 (*Rev. Sup., p.* 517), presented to the common council of that city on May 5th, 1891, a statement that $35,000 was the amount needed for the purchase of apparatus necessary for the establishment of a paid fire department, and requested council to raise and appropriate that sum for that purpose, which council, on advice of the city solicitor, refused to do.

Relators ask a writ of *mandamus* to compel the common council to do what they have refused to do.

The contention of relators is, that a positive duty in that respect has been imposed on council by law which their refusal has violated, and that relief can only be obtained by the use of the prerogative writ compelling obedience to the law.

A brief review of the legislation relied on to sustain relators' contention will make clear the question presented for solution.

The "Act to remove the fire and police departments in the cities of this state from political control" (the provisions of which must be assumed to have been accepted by this city) did not empower the boards appointed thereunder to create new fire departments; it only removed the management and control of existing departments from the council or other governing body of the city which accepted its provisions and lodged such management and control in the non-partisan board provided for by the act.   *Lyon* v. *Newark,* 24 *Vroom* 92.

An act entitled "An act to enable cities and municipalities of this state to create and maintain a paid fire department," approved March 1st, 1886 (*Rev. Sup., p.* 686), gave authority to the governing body of any city then without a paid fire department to provide by general ordinance for the creation and maintenance of such a department, and the appointment by the mayor, with consent of such governing body, of a board of fire commissioners, whose powers and duties should be regulated by said ordinance. The provisions of the act were to remain inoperative in any city until assented to by a majority of the legal voters when submitted to them in the manner prescribed. Upon the acceptance of the act and the exercise of the power thereby conferred, the city was further empowered to issue bonds for the purpose of creating and maintaining such a fire department.

Under the provisions of the two acts above mentioned, it is obvious that a board of fire commissioners appointed under the act of 1885 in a city having no paid fire department, and having the management and control of an existing fire department, might, by the subsequent adoption by such city of the act of 1886, be wholly superseded in its powers and duties by a board appointed under the provisions of that act.

To obviate this incongruity an act was passed entitled "A supplement to an act entitled 'An act to enable cities and municipalities of this state to create and maintain a paid fire department,'" approved March 1st, 1886, which supplement was approved March 18th, 1891. *Pamph. L., p.* 180. Its preamble recited that certain cities had adopted, or might adopt, the provisions of the act of 1885, and had created, or might create, a board of fire commissioners thereunder, and had desired, or might desire, to create a paid fire department, to be under the control of such board. By its first section it is enacted, " that the act to which this is a supplement be so amended that in all cities which have established, or which may hereafter establish, a board of fire commissioners created under and by virtue of the act approved May second, one thousand eight hundred and eighty-five, entitled 'An act to

remove the fire and police departments from political control,' the creation and establishment of a paid fire department shall be had and made by resolution of said board of fire commissioners, adopted by a three-fourths vote of said commission, instead of by general ordinance of the common council, board of aldermen or other governing body of said city, as is provided by the act to which this is a supplement."

By its second section it is provided that such a resolution shall remain inoperative until assented to and approved by a majority of the legal voters voting in the manner prescribed thereby.

The third section is in the following language :

" 3. And be it enacted, That upon the ratification and adoption of said resolution by the popular vote, it shall be the duty of said boards of fire commissioners to present to the common council, board of aldermen, or other governing body of such city, a detailed statement of the amount of money needed for the purchase of the engines, utensils and apparatus necessary for the effective establishment of the said fire department, and it shall be the duty of the said common council, board of aldermen, or other governing body, and it is hereby required to raise such money by the issue and sale of bonds in the manner provided by the act to which this is a supplement, and to appropriate said money to said boards of fire commissioners. for, their use and disposition in the purchase of said engines, utensils and apparatus in the method by which the said boards of fire commissioners now make purchases under the act to which this is a supplement."

By the statement of facts before us, it further appears that the question of the creation of a paid fire department was submitted to the voters of Trenton at the charter election by the action both of the common council, acting under the act of 1886 above mentioned, and by the relators, the board of fire commissioners, acting under the supplement of 1891. A majority of votes was cast in favor of a paid fire department.

Thereupon the board requested the council to take the action, which they refused to do.

It is obvious and conceded that, if the supplement of 1891 is a valid expression of the legislative will, then it was the duty of the common council of Trenton, upon receiving from relators a detailed statement such as is required by its third section, to raise and appropriate to that board the money named in the statement as necessary to the establishment of a paid fire department.

The contention on the part of the city is, that the supplement of 1891 is ineffective and wholly void, as being within the prohibition of that part of article IV., section 7, paragraph 4 of the constitution, which reads: "No law shall be * * * amended by reference to its title only, but * * * the section or sections amended shall be inserted at length."

The legislative intent in this supplement is plain and unmistakable. The original act of 1886 had authorized all cities without paid fire departments to create and maintain such departments. The scheme of that legislation was not, however, congruous with the scheme of previous legislation in the act of 1885. The object of the supplement was to afford a mode of acquiring the benefits of the act of 1886 to cities which had accepted the act of 1885 without incongruity. This plain design was within legislative power, notwithstanding it produced diversity of municipal government. *In re Cleveland,* 23 *Vroom* 188.

But the legislative intent was not effectuated by an independent act applying to that class of cities which had accepted, or might accept, the provisions of the act of 1885. On the contrary, the legislation under review is expressly amendatory, and the supplement is declared to be an intended amendment to previous legislation.

The clause of the constitution invoked in this case is both prohibitory and mandatory. It forbids amendment by mere reference to title, and enjoins the insertion of the section or sections amended at length. *Evernham* v. *Hulit,* 16 *Vroom* 53. The evil aimed at by it was not the difficulty of ascer-

taining the legislative will, when amendatory legislation affected its purpose by mere reference, but, as has been frequently pointed out in this court, the opportunity of imposition and fraud on legislators and the public afforded by such modes of legislation. To prevent this, a limitation was imposed, not on the power of the legislature, but upon the means by which it might exercise its power. *Campbell* v. *Board*, 16 *Vroom* 241; *S. C.*, 18 *Id.* 347; *Christie* v. *Bayonne*, 19 *Id.* 407; *Haring* v. *State*, 22 *Id.* 386. That the act, when compared with other legislation, plainly discloses the legislative intent, does not obviate this objection. Legislation cannot be effected by means and in modes prohibited by the fundamental law.

An act which on its face is a complete and perfect act of legislation, and does not purport to amend prior legislation, is not interdicted by the constitutional clause in question, although it amends, by implication, other legislation on the same subject. *Evernham* v. *Hulit, ubi supra.*

If the act before us did not, upon its face, evince its amendatory character, it is open to question whether it could be deemed a complete act of legislation.

But the legislative will has been expressed in the form of a proposed amendment; the subject matter of the proposed legislation was within such an amendment, and it is not for the courts to say that the expressed design to amend was a design to enact independent legislation.

The act comes, therefore, precisely within the terms of the constitutional prohibition, and since the proposed amendment is made by mere reference to title, and the sections of the act which would be amended were not inserted at length, the act must be pronounced ineffective and invalid.

It has not been argued that the third section of the supplement of 1891 can be severed from the remainder of the act and sustained. It is obvious, from reading the supplement, that its scheme is connected and inseparable, so that on failure of any part thereof the whole must fail.

The result is, that the rule before us must be discharged.