Peter *vs.* Carter and others, Trustees of the Rockville Academy.

(Decided 10th January, 1889.)

GEORGE PETER, one of the Trustees of the ROCKVILLE ACADEMY *vs.* ROBERT W. CARTER, and others, Trustees of the ROCKVILLE ACADEMY.

*Devise — Construction — Injunction — Sale of Property devised — Application of Proceeds as Required by Testator.*

Where a testator devised certain real estate to the trustees of an academy, "for the use of the said academy," * * * said property "not to be appropriated to any building or improvement on

the academy lot, but to constitute a perpetual fund for education," equity will enjoin the trustees from applying any portion of the money derived from the sale of such real estate, to the purchase and improvement of other real estate to be used as an academy property.

The trustees could sell the property devised and invest the proceeds, if they thought they could derive more income from such investment than by renting or cultivating the property; but in either case they could apply the income only, and to no other purpose than that to which it had been devoted by the testator.

APPEAL from the Circuit Court for Montgomery County, in Equity.

The case is stated in the opinion of the Court.

The cause was submitted to ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*George Peter,* for the appellant.

*W. V. Bouic, Jr., H. W. Talbott,* and *J. B. Henderson,* for the appellees.

MILLER, J., delivered the opinion of the Court.

Julius West by his will admitted to probate in May, 1860, after first giving his wife a life estate therein, devised and bequeathed to "the trustees of the Rockville Academy in Montgomery County, all his lands and negroes and personal estate, to take and hold to themselves and their successors forever, for the use of the said academy, *provided,* that the said negroes shall not be sold by said trustees unless for gross misconduct, and the said negroes be maintained, protected and comfortably supported by the said trustees, if they should become infirm or unable to work, and they shall be permitted to live on the farm where

I now reside, subject in all respects to the control of the said trustees,—*the said lands and personal estate not to be appropriated to any building or improvement on the academy lot, but to constitute a perpetual fund for education.*" The clause referring to the negroes has of course become inoperative since emancipation. The testator's real estate consisted of a farm containing about two hundred and fifteen acres, and the academy trustees have bought out the widow's life estate in it, who is still living.

This academy was incorporated by the Act of 1809, ch. 152. Among the powers granted to the trustees was that of "taking and holding to themselves and their successors for the use of the academy, real or personal property given them by devise or bequest, and to sell or otherwise dispose of the same for the use of the academy in such manner as to them shall seem most beneficial to the institution, and to receive the rents, issues, profits, income and interest of the same, and to apply the emoluments thereof to the proper use and advancement of the said academy. The charter also gave them power to appoint 'professors, teachers and assistants for instructing the students and scholars of the said academy in the vernacular and learned languages, and such sciences and branches of education as they shall think suitable and proper to be taught therein,' and to provide for the payment of their salaries."

When the testator made his will the trustees owned an academy building with ample grounds for all needful purposes, in the town of Rockville, which had been regularly used as a place for the education of the youth of the town and vicinity for more than twenty years before his death. In July last, a majority of the board of trustees passed an order to the effect that this "West farm" be sold, and the purchase money,

or so much thereof as may be necessary, be applied to the *purchase* and *improvement*, for the purpose of using the same as an academy property, of eight acres of land near the town of Rockville, and that not more than $6,000 of the fund be applied to the purchase of this land.

One of the trustees who opposed the passage of this order, filed the bill in this case against the others, asking that they be enjoined from carrying the same into effect, upon the ground that to do so will work a perversion of the property from the uses and purposes for which it was given to the trustees, by the testator, to the great detriment of the youth for whose education it was specially intended, and that they have no right to use the property or its proceeds for any other purpose than giving an education to such youths as they may deem proper beneficiaries. The Court below refused to grant the injunction, and from that refusal the complainant has taken this appeal.

The only question which the record and appeal presents for review, is, can this order be carried out consistently with the intention and purposes of the testator as expressed in his will? We find no difficulty in deciding that question. He says in very plain language, that his property shall "not be appropriated to any building or improvement on the academy lot," but shall "constitute a perpetual fund for education." He assumed that grounds, buildings and improvements had already been sufficiently provided, and that if the trustees wished to make further improvements, or erect other buildings on the same lot, or to change the location of the academy by purchasing and improving a new site therefor, they would do so from other resources. What he intended was that the *income* from his property should be applied entirely and exclusively to the educational department of the institution; in other

words, to the payment of salaries to competent teachers, engaged in teaching the youths who came to the academy for the purpose of receiving instruction in the several branches of education there to be taught according to the terms of its charter. In order to preserve the fund as he constituted it, a permanent or perpetual one, income alone can be used, and no part of the principal can be touched. We have no doubt as to the power of the trustees to sell the property and invest the proceeds, if they think they can derive more income from such investment than by renting or cultivating the farm, but in either case they can apply income only, and can apply that to no other purpose than that to which it has been devoted by the testator.

From this construction of the will it is manifest that what the trustees propose to do by the order they have passed, is in direct conflict with the wishes and intentions of the testator. The order appealed from must therefore be reversed, and the cause remanded to the end that an injunction may be granted as prayed by the bill.

*Order reversed, and
cause remanded.*

(Decided 10th January, 1889.)