# MARYLAND REPORTS.

ISAAC GANS *vs.* JOHN M. CARTER and MATTHEW K. AIKEN, jointly garnishees of JOHNS H. R. NICHOLSON, survivor of ANDREW J. NICHOLSON, deceased, late partners, trading as J. J. NICHOLSON & SONS.

*Sections 29 and 33 of Article 3 of the Constitution—Section 205 of Article 16 of the Code—Act of 1890, ch. 263, authorizing the Fidelity and Deposit Company of Maryland to become Sole surety on Trustees' bonds—Special legislation—Title of Act of Assembly.*

Section 205 of Article 16 of the Code, provides that every trustee for the benefit of creditors, shall give bond with sureties for the faithful performance of his trust. The *Fidelity and Deposit Company of Maryland* is authorized by its charter (Act of 1890, ch. 263,) to become sole surety in all cases where two or more sureties are required for the faithful performance of any trust or office; and its charter further provides that "it shall and may be lawful for any Court, register, clerk, or other officer to approve said company as sole surety in all such cases." Section 33 of Article 3 of the Constitution declares that "the General Assembly shall pass no special law for any case for which provision has been made by an existing general law." By the same section it was made the duty of the Legislature to pass general laws, providing not only for the cases enumerated in the section, but for all other cases in which a general law could be made applicable. HELD:

1st. That section 205 of Article 16 of the Code, providing that every trustee for the benefit of creditors, shall give a bond with

sureties, referred to individual or personal suretyship, and there was no general law providing for corporate security in such case.

2nd. That as a corporation can exercise such powers only as are conferred upon it by its charter, the *Fidelity and Deposit Company* could not become a surety on a trustee's bond unless specially authorized by its charter, and the provision in its charter conferring this power could not be said to be a special law, for which provision had been made by a general law.

3rd. That such provision could not be regarded as unconstitutional upon the ground that it conferred upon a corporation a privilege or right not enjoyed by private persons.

4th. That the Act of 1890, ch. 263, entitled, "An Act to change the name of the *Fidelity Loan and Trust Company of Baltimore City*, to the *Fidelity and Deposit Company of Maryland*, and to amend and define the powers of said Company," was not in conflict with section 29 of Article 3 of the Constitution which declares that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

5th. That the provision in the charter of the Fidelity and Deposit Company authorizing it to become sole surety on the bonds of trustees, was not a repeal, by implication or otherwise, of section 205 of Article 16 of the Code, which still remains in force but applies to the suretyship of natural persons.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*M. R. Walter*, for the appellant.

It is claimed by the appellees that the suretyship of the Fidelity and Deposit Company is sufficient in this case because, by its charter, (Act of 1890, ch. 263,) it is authorized to become sole surety where two or more sureties are required. The appellant contends that this

provision of the charter is unconstitutional and void, for the following reasons:

Because it is a *special law* within the contemplation of sec. 33 of Art. 3 of the Constitution, which provides that "the General Assembly shall pass no special law for any case for which provision has been made by an existing general law," and as provision had been made by an existing general law, it falls within that constitutional prohibition, and is therefore void. The language of sec. 33 of Art. 3, above quoted, is mandatory. *County Commissioners vs. Meekins,* 50 *Md.,* 45.

The case therefore is this: The Constitution provides that " the General Assembly shall pass no special law for any case for which provision has been made by an existing general law," The Code of 1888, Art. 16, sec. 205, (Act of 1874, ch. 483,) provides that every trustee for the benefit of creditors, must file a bond with *sureties.* This section of the Code being in full force the General Assembly passed an Act giving the Fidelity and Deposit Company the right to become sole surety on bonds of trustees for the benefit of creditors; in other words, that the "Fidelity" shall alone be exempt from the operation of the general law.

If this is not "a special law for a case for which provision has been made by an existing general law," what is it? The general law (Art. 16 sec. 205,) requires at least two sureties on every trustee's bond, and is a general law on that subject. The Legislature says the "Fidelity" shall alone, of all persons, natural or artificial. be exempt from the operation of that general law.

The fact that the Fidelity and Deposit Company is a corporation cannot affect the decision of this question, for the Legislature has no power to confer upon a corporation privileges, or to grant to it exemptions, which it cannot constitutionally confer upon or grant to a natural person. *Citizens Security & Loan Co. vs. Uhler,* 48 *Md.,* 459; *Gordon vs. Winchester B. Asso.,* 12 *Bush.,* 112.

The right of the Legislature to confer constitutionally such special powers, was distinctly negatived by this Court in the case of *Citizens Security and Land Co. vs. Uhler*, 48 *Md.*, 459.

Now, the case at bar is much stronger than the *Uhler Case*, for there the Legislature did not undertake to confer special privileges on *one* corporation, but granted them to all corporations like the "Citizens;" and notwithstanding the fact that the *whole class* of corporations were treated alike, the Court held that it was special legislation and void.

The fact that it was the Constitution of the State that provided that "the legal rate of interest shall be six per cent. per annum" does not weaken the argument in the least,—that was to be the rate "unless otherwise provided by the General Assembly." The rate fixed by the Constitution was nothing more than a *general* law, applicable to the whole State, for the Legislature had, according to the Constitution, full power to provide otherwise. In other words, it had the same control over the matter as if the rate had been fixed by the General Assembly alone. And yet this Court held that it would be special legislation to allow any particular individual or class to charge a higher rate than that fixed by the general law.

The case of *Gordon vs. Winchester Building Asso.*, 12 *Bush.*, 112, is directly in point. A *special Act of Assembly* chartering that association, provided that it might loan money at such rate of interest as might be agreed upon by the parties thereto, together with such premiums therefor as might be offered by the parties to whom the loans might be made. A *general statute* of the State of Kentucky, fixed the rate of interest at ten per centum, and all persons were prohibited under a penalty, from charging more. The question before the Court was, had the General Assembly power under the Constitution of

Gans *vs.* Carter and Aiken.

that State by a special Act, not only to relieve the Association against the penalty imposed upon all others for receiving the above rate, but also to empower it to enforce its contracts for more than the rate others were permitted to charge.

The question is to be decided as if the Legislature had by a special Act undertaken to authorize a natural person named in the Act to charge a greater rate of interest than was permitted by the general law, and to relieve such person from the penalty demanded against all others for charging a higher rate of interest than is allowed by law. *It seems to us that a bare statement* of the question is all that is necessary to its decision. If the Legislature may constitutionally confer such privileges and exemptions upon one citizen, then it may confer the like privileges and exemptions upon one or five in each county of the State, and thus constitute a privileged class to grow and fatten by practices in which all others are prohibited under penalties from engaging. *Wally vs. Kennedy,* 2 *Yerger,* 554; see *Holden vs. James,* 11 *Mass.,* 404; *Lewis vs. Webb,* 3 *Maine,* 326, 336.

The effect of the special legislation in the case at bar, is, as stated in *Lewis vs. Webb,* precisely as if the special Act were added, as a proviso, to section 205 of Article 16. In other words, it is just as if section 205 required every trustee to give bond with *sureties;* provided, this section shall not apply to the Fidelity and Deposit Company of Maryland.

The charter of the Fidelity and Deposit Company is, in the particular mentioned, unconstitutional and void, because the Act incorporating it is in contravention of section 29 of Article 3 of the Constitution, which requires: That "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." The language of this section is mandatory. *Co. Com'rs vs. Meekins,* 50 *Md.,* 45. See

also *State vs. Norris*, 70 *Md.*, 94; *Stiefel, et al. vs. Maryland Institution for the Instruction of the Blind*, 61 *Md.*, 148.

Now, what does the special Act incorporating the Fidelity do? It repeals *pro tanto* sec. 205 of Art. 16. That section requires *every* trustee for the benefit of creditors to execute bond *with sureties.* The Act of 1890, ch. 263, repeals that part of sec. 205 relating to "sureties," so far as the Fidelity is concerned.

The Act therefore is obnoxious to sec. 29 of Art. 3 for the following two reasons :

1st. It embraces two subjects—the incorporation of the Fidelity, and the repeal of section 205 of Article 16.

2d. Because there is nothing in the title of the Act to indicate that sec. 205 of Art. 16 is repealed.

How could any one possibly know from the title that the body of the Act repealed the general statute, and exempted the corporation from the operation of a law to which every one else in the State was subject? If this be held legitimate legislation under sec. 29 of Art. 3 of the Constitution, what is to prevent the Legislature from passing special Acts granting to bodies thus created privileges and immunities to any extent denied to all others? If the Legislature has the right in one instance, it must have it in all, and "a constructive repeal of a constitutional provision," to use the language in *Stiefel vs. Md. Institution, &c.* would be the result. The exact question now under discussion has, we think, been already settled by this Court in the case of *Scharf, Commissioner of the Land Office against Tasker*, 73 *Md.*, 383, 384, and we think the *Scharf Case* decisive of this. The charter of the Fidelity, if operative, unquestionably according to that authority repeals section 205 of Article 16, *pro tanto*, and there is certainly nothing in the title of the Act to suggest that any such repeal was contemplated.

It was not necessary or indispensable for the incorporation of the Fidelity, that section 205 of Article 16, should be repealed, or that it should have the right to become sole surety. It might be germane to the incorporation for it to have the right to become *surety* on bonds, but it was certainly not germane for it to have the right to become sole surety, and thereby repeal the general statute which required two or more sureties.

*N. Winslow Williams*, and *William A. Fisher*, for the appellees.

BRISCOE, J., delivered the opinion of the Court.

Johns H. R. Nicholson of Baltimore City, survivor of Andrew J. Nicholson, partners, trading as J. J. Nicholson & Sons, on the 14th of January, 1892, executed a deed of his individual and of the firm's property to the appellees, John M. Carter and Matthew K. Aiken, in trust for the benefit of creditors. The bond which they executed and filed as trustees contained but one surety, viz., The Fidelity and Deposit Company of Maryland. On the 20th of January, 1892, an attachment at the suit of the appellant, was issued against Johns H. R. Nicholson and laid in the hands of the trustees as garnishees, and the judgment, upon the plea of *nulla bona,* being in favor of the trustees, the plaintiff has appealed. The question then in the case is whether the Act of Assembly of 1890, chapter 263, incorporating the Fidelity and Deposit Company of Maryland, in so far as it is authorized to become sole surety in all cases where by law two or more sureties are required for the faithful performance of any trust or office, is constitutional? The Code provides that every trustee for the benefit of creditors shall give bond with sureties for the faithful performance of his trust. Art. 16, sec. 205.

By its charter the Fidelity and Deposit Company of Maryland, is authorized to become *sole surety* in all cases

where two or more sureties are required for the faithful performance of any trust or office; and "it shall and may be lawful," its charter further provides, "for any Court, register, clerk, or other officer to approve said company as sole surety in all such cases."

This provision, it is contended, is in conflict with the Constitution which declares that "The General Assembly shall not pass local or special laws in any of the following enumerated cases, viz., For extending the time for the collection of taxes; granting divorces; changing the name of any person; providing for the sale of real estate belonging to minors or other persons laboring under legal disabilities, * * * giving effect to informal or invalid deeds or wills * * And the General Assembly shall pass no special law for any case for which provision has been made by an existing general law. The General Assembly at it first session after the adoption of this Constitution, shall pass general laws providing for the cases enumerated in this section which are not already adequately provided for, and for all other cases where a general law can be made applicable." Art. 3, sec. 33, Const.

There cannot be, it seems to us, any difficulty as to the object and the mischiefs intended to be remedied by this clause of the Constitution. In the debate upon it in the Constitutional Convention of 1864, by which this limitation upon the legislative power was for the first time imposed, it was said that nearly three-fourths of the time of the Legislature was taken up in the consideration of the local and special laws; and that in many instances special laws had been passed affecting injuriously private and public rights upon mere *ex parte* applications. And it was deemed advisable therefore in certain cases enumerated in this section to deny altogether the exercise of legislative power; and in order to relieve the Legislature of the necessity of considering applications for special laws in other cases, it was deemed

advisable to provide that the General Assembly should not pass a special law in any case for which provision had been made by an existing general law. And further than this it was made the duty of the Legislature to pass general laws providing not only for the cases enumerated in this section, but in all other cases in which a general law could be made applicable. We all agree, therefore, that the Legislature has no power to pass a special law in any case for which provision has been made by a general law.

The appellant's contention assumes, and must necessarily assume, that there was a general law authorizing and empowering the Fidelity and Deposit Company to become surety on a trustee's bond for the faithful performance of a trust. And herein lies the error of his contention. There was a general law providing that every trustee for the benefit of creditors should give a bond with sureties. But the suretyship here referred to is individual or personal suretyship.

There was no general law providing for corporate security in such cases, and as a corporation can exercise such powers only as are conferred upon it by its charter, the Fidelity and Deposit Company could not, it is clear, become a surety on a trustee's bond, unless specially authorized by its charter. And the provision in its charter conferring this power cannot be said therefore to be a special law for which provision had been made by a general law.

But then it is argued that this provision is unconstitutional because it confers upon the company a privilege or right not enjoyed by natural persons. In what sense it may be considered a *privilege* for one to become a *surety* for another, it may not be easy to understand. But be that as it may, if it is to be considered a privilege it is one which every person has the right to exercise, independent altogether of legislative authority.

We cannot agree, however, that the Legislature has no power to confer privileges and franchises upon a corporation not enjoyed by individual persons.   Such franchises are granted in the interest of the public to be exercised, in theory at least, for the benefit of the public, and subject always under the Constitution to repeal and amendment by the Legislature as it may, in the exercise of its judgment, deem proper.   We do not mean of course that it can grant franchises forbidden by the Constitution.   And the Constitution having declared the legal rate of interest to be *six* per cent. per annum, unless otherwise provided by the General Assembly, and the Legislature having fixed the rate at six per cent., it could not be held to authorize a corporation to charge a higher rate than allowed by the general law.   In other words, the Constitution meant that the rate of interest should be uniform alike upon individuals and corporations.

Now as to the last of these supposed constitutional difficulties, namely, that the provision is in conflict with sec. 29, Art. 3, which declares "that every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title," we have but a word to say, and that is to repeat what we have so often said, that the object of this clause was to prevent the embodying into the same Act distinct and separate matters of legislation, having no connection whatever with each other, and matters not referred to in the title of the Act.   Here the title of the Act is "An Act to change the name of the Fidelity Loan and Trust Company of Baltimore City, to the Fidelity and Deposit Company of Maryland, and to amend and define the powers of said company."   Every provision in the Act refers and relates to the powers and franchises to be exercised by the company, and among these powers is the one authorizing it to be surety on the bonds of trustees.   Such a provision

is not a repeal by implication or otherwise, of section 205, Art. 16. That section still remains in full force, but it applies, as we have said, to the suretyship of natural persons. The charter of the Fidelity and Deposit Company authorizes it to become surety in certain cases, a power which it could not exercise under any general law. And the grant of such a power in no manner interferes with the general law in regard to personal security. *County Commissioners of Dorchester Co. vs. Meekins*, 50 *Md.*, 28; *County Commissioners of Calvert Co. vs. Hellen*, 72 *Md.*, 603.

There were two exceptions reserved by the appellant at the trial below, one to the admissibility of the bond given by the trustees, in evidence, and the second, to the rejection of the prayers offered by the plaintiff. The prayers were based upon the theory that the Act of 1890 was unconstitutional and void, and were properly rejected.

It follows, therefore, for the reasons heretofore expressed, that the Court below committed no error in its rulings, and the judgment will be affirmed.

*Judgment affirmed.*

(Decided 13th January, 1893.)