HOME FOR INCURABLES *v.* NORA J. BRUFF et al.

NORA J. BRUFF et al. *v.* HOME FOR INCUR-ABLES et al.

[Nos. 34, 35, October Term, 1930.]

158

*Decided January 14th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*W. Ainsworth Parker,* with whom was *James Carey, 3rd,* on the brief, for the Home for Incurables.

*Edward H. Burke,* with whom were *H. Courtenay Jenifer* and *Bowie & Burke* on the brief, for Nora J. Bruff and others, next of kin.

*Charles McH. Howard,* with whom was *Frederick J. Singley* on the brief, for the Maryland Bible Society.

*Arthur L. Jackson,* for the Southern Presbyterian Church and the Presbyterian Foundation.

PARKE, J., delivered the opinin of the Court.

Georgia Gelston Jones, a resident of Baltimore City, died on July 24th, 1928, leaving a duly executed will which was executed on December 28th, 1897, and which devised and

bequeathed her property. The administration of her estate was substantially accomplished, with the exception of several disputed claims, and certain devises and bequests about which there was controversy. In order to obtain a construction of the will and to make the distribution under the control and with the guidance of a court of equity, the executor filed a bill of complaint, and from the ensuing decree certain of her next of kin and the Home for Incurables of Baltimore City, a devisee and legatee, have severally appealed. These appeals present a number of questions with reference to the validity of gifts to the Maryland Bible Society, to the "Home for Incurables for Men" in Baltimore, Md.; to the "Home for Incurables for Women in Baltimore," Md.; and to the "Invalid Fund for Disabled Ministers" in the care of the Trustees of the General Assembly of the Presbyterian Church in the United States (popularly known as the Southern Presbyterian Church). In order to avoid repetition, there will be no general statement of the problems presented, which can be grouped advantageously with respect to the separate beneficiaries.

1. By the fourth item of her will the testatrix devised and bequeathed to the Maryland Bible Society the sum of $1,000 and a ground rent of $27 yearly "to be applied to the uses of the said corporation as a 'memorial' of my father." After her death the executor found a certificate for $1,000 of Baltimore City Dock Improvement 4 per cent. stock, due 1961, which the testatrix had issued on June 18th, 1913, to herself for life and at her death to the Maryland Bible Society. There is no evidence of any act or declaration by the testatrix from which it could be inferred that the subsequent gift of stock was intended to be a satisfaction or payment in whole or in part of the legacy of $1,000. The mere fact that the gift of stock was subject to the life estate of the donor, and that its face value was the same in amount as the legacy of $1,000, is insufficient to raise a presumption of ademption or satisfaction, although the party takes both the gift and the legacy at the death of the testatrix. *Loyola College v. Dugan,* 137 Md. 545, 550, 113 A. 81; *Gallagher*

*v. Martin,* 102 Md. 115, 62 A. 247; *Miller on Construction of Wills,* secs. 144, 145; 2 *Pomeroy's Eq. Juris.* (4th Ed.), sec. 562.

2. In addition to this gift, the Maryland Bible Society was made the beneficiary of valuable gifts of land and money by the fifth, nineteenth, and twentieth items of the will. The gift under the nineteenth item of the will is of one-half of the residuary estate upon the death of a life tenant without issue surviving at the time of her death. As this contingency has happened and as, by the twentieth item of the will, the society is given an additional one twenty-fourth of the residuary estate, thirteen twenty-fourths of the entire residuary estate was attempted to be given to the society.

The contention is made by the next of kin that every one of the gifts to the Maryland Bible Society must fail and fall to the next of kin on the ground that intestacy results because the corporate existence of the Maryland Bible Society is at an end; but if the society be a subsisting corporate entity, then the gifts of the thirteen twenty-fourths part of the residuary estate are voidable, since they would increase the income of the society to more than the yearly statutory limitation of $10,000; and a court of equity will not lend its aid to enforce what the state may avoid and thereby create an intestacy as to the gifts mentioned.

The Maryland State Bible Society was incorporated by the General Assembly of Maryland, by chapter 290 of the Acts of 1842-43, and its corporate life was limited to thirty years. It was given the capacity "to hold by deed, bequest, and devise any interest, estate or property, real, personal or mixed in possession or expectancy and also to use, sell, mortgage, lease, transfer or convey all or any part of said property; provided, that the clear annual income of said estate, interest and property shall not exceed the sum of ten thousand dollars." The Legislature reserved the right to alter or amend the act of incorporation at pleasure. Sections 1-4.

By chapter 148 of the Acts of the General Assembly of 1872, entitled "A supplement to an Act entitled 'An Act to

incorporate the Maryland State Bible Society, passed at December session, eighteen hundred and forty-two, chapter two hundred and ninety, and to change the name of said corporation to The Maryland Bible Society,'" it was enacted "that the corporate franchises granted by the said Act of Assembly, entitled an Act to incorporate the Maryland State Bible Society, passed at December session, eighteen hundred and forty-two, chapter two hundred and ninety, be and the same are hereby continued and re-enacted without any limitation as to the duration of said corporation, subject to the provisions of this Act; and that the name of the said corporation be * * * changed to The Maryland Bible Society," and that the provision with respect to the clear annual income be continued. The Legislature further declared that it reserved the right to alter, amend, or repeal the new as well as the original act at any time.

The next of kin assert that the Maryland Bible Society has no legal corporate existence; and, so, it is incapable of taking any gift. In support of this position, they rely upon the two provisions of article 3, section 29, of the Maryland Constitution: (A) That every law shall embrace but one subject and that shall be described in its title; and (B) that no law, or section of law, shall be revived or amended by reference to its title or section only.

A.   The one subject-matter of chapter 148 of the Acts of 1872 was the charter of the Maryland State Bible Society, which had been granted by the General Assembly by chapter 290 of the acts passed at the December session, 1842. This charter was about to expire as its existence was limited to a period of thirty years, and the act was consequently introduced for the prevention of the end of the corporate existence through the passage of time, by enlarging the duration of its corporate existence in perpetuity; and to permit it to exercise its corporate powers under a slightly different corporate name, but subject to the same provisions with respect to the limitation of the clear annual income to $10,000, and the reservation to the Legislature of the right to alter, amend, or repeal both acts. The natural and obvious meaning of

the term "supplement to an act," in the title to a pending legislative bill to amend a subsisting statute, is that something is to be incorporated in the statute by way of addition, completion, or extension, so as to supply a deficiency or meet a want. *Century Dictionary,* "Supplement"; 37 Cyc. 605. So, the perpetual extension by statute of the life of a corporation, with a similar continuation of its corporate powers, as the period of its existence was about to end, is clearly within the purview of a supplemental act, since it added perpetual duration to a subsisting charter.

While the prolongation of the corporate existence was indispensable to a continuance of corporate power or function, a change in the corporate name is a nominal matter; and, therefore, when the proposed law was introduced, it affected the charter in matters of substance and of form. The title reflected this twofold object, since it is composed of two clauses, which respectively refer to a supplement to the charter and to an alteration in the corporate name. As has been seen, these are distinct, but not conflicting, provisions, which relate to the same general subject-matter. Furthermore, the second clause does not limit the scope of the first clause, with which it is conjunctively connected as an additional and co-ordinate clause. So, the language and grammatical form of the title advised the legislators not only that the proposed enactment would supply the original charter with complementary provisions which it lacked or needed and with an alteration in the corporate name, but also that the change in name was in addition to, and not among, the supplementary amendments contemplated. The body of the act was within the contemplation óf the title, and wholly dealt with the powers of the corporation, so the statute has but one general subject which is fairly disclosed by its title, and, therefore, in this respect, the requirements of section 29 of article 3 of the Constitution is fulfilled. 1 *Lewis' Sutherland on Statutory Construction* (1904), sec. 131; *County Commrs. of Worcester County v. School Commrs.,* 113 Md. 305, 309, 77 A 605; *Phinney v. Sheppard etc. Hospital,* 88 Md. 633, 42 A 58; *Brown v. Md. Telephone*

*Co.,* 101 Md. 574, 579, 580, 61 A. 338; *Gans v. Carter & Aiken,* 77 Md. 1, 25 A. 663; *Dinneen v. Rider,* 152 Md. 343, 357, 358, 136 A. 754.

In *Drennen v. Banks,* 80 Md. 310, 315, 30 A. 655, and in *Smith v. Standard Oil Co.,* 149 Md. 61, 67, 130 A. 181, the particular second clause of the title was not a co-ordinate of the first clause but qualified and limited the scope of the general first clause, and therefore was misleading as to the intent to include other subject-matter in the enactment. In the first case, the statute was upheld because the legislation was within the limits of both the general and qualifying and dependent second clause, and the act was no broader than either clause of its title. *Drennen v. Banks,* 80 Md. 315-320, 30 A. 655. But in the second case, the act was declared void because the legislation went beyond the subject limited by the restrictive second clause, as is illustrated by the case cited in support of Section 140 of 1 *Lewis' Sutherland on Statutory Construction* (2d Ed.).

B. The second point is based upon another clause of section 29 of article 3 of the Constitution of Maryland, which ordains that "no law, or section of law, shall be revived or amended by reference to its title or section only." This provision relates to the body of the statute and not to its title, and must be read in connection with these subsequent parts of section 29: "And it shall be the duty of the General Assembly, in amending any article or section of the Code of Laws of this State, to enact the same as the said article or section would read when amended. And whenever the General Assembly shall enact any Public General Law, not amendatory of any section or article in the said Code, it shall be the duty of the General Assembly to enact the same, in articles and sections, in the same manner as the Code is arranged, and to provide for the publication of all additions and alterations which may be made to the said Code." See *Dorchester County Commrs. v. Meekins,* 50 Md. 28, 45; *Anderson v. Baker,* 23 Md. 531, 570, 585. There are no other provisions with respect to the form the body of an enactment must assume; and as these refer exclusively to amendments

of any article or section of the Code, and to enactments of any public general law that are not amendatory of any such article or section, the quoted requirements have no application to the instant case, because the statute in question is neither an amendment of the Code nor a public general law, but merely an amendment of the charter of a private corporation. See *Const. of 1864*, art. 3, sec. 28; *Const. of 1851*, art. 3, sec 17. And since the cases, *Tuskaloosa Bridge Co. v. Olmstead*, 41 Ala. 9; *Stewart v. Commrs. of Hale County*, 82 Ala. 209, 2 So. 270; *State v. Hubbard*, 148 Ala. 391, 41 So. 903; *Board of Fire Commrs. v. Trenton*, 53 N. J. Law, 566, 22 A. 731; *Board of Penitentiary Commrs. v. Spencer*, 159 Ky. 255, 166 S. W. 1017; *People v. Greer College*, 302 Ill. 538, 135 N. E. 80; *People v. Crossley*, 261 Ill. 78, 103 N. E. 537, 541; *Beale v. Pankey*, 107 Va. 215, 57 S. E. 661; *Portland v. Stock*, 2 Or. 69; *Copeland v. Pirie*, 26 Wash. 481, 67 P. 277; *Appeal of Barrett*, 116 Pa. 486, 10 A. 36; *Seay v. Laurel etc. Co.*, 110 Miss. 834, 71 So. 9; *In re Lovett* (D. C. Illinois) 2 Fed. (2d) 307; *Moore v. Tunica County*, 143 Miss. 821, 107 So. 659; *Smails v. White*, 4 Neb. 353, are decisions of courts which were controlled by constitutions severally prescribing that the amendatory statute must set out at length the act so amended, they do not support the position of the next of kin.

It follows that there is neither a mandatory nor a directory constitutional provision which requires that the revival or amendment of the charter of a private corporation must set out in full the whole charter or such sections as are so finally revived or amended. The question here then is: Was chapter 290 of the Acts of 1842-43, creating a private corporation, revived or amended by reference to its title or section only? There are but few decisions which relate to this clause. In *Davis v. State* (1854), 7 Md. 151, 158, the court held that there could be a repeal of a statute by implication where there was a subsequent inconsistent enactment, although the Constitution then read "no law or section of law shall be revived, amended, or repealed by reference to its title or sec-

tion only." *Const.* 1851, art. 3, sec. 17 In *Dorchester County Commrs. v. Meekins* (1878), 50 Md. 28, the decision was that the imposition of the duty upon the General Assembly to enact public laws in articles and sections was merely directory; and that the present Constitution had omitted the words "or repealed," and there was no longer any restriction upon the Legislature with respect to the repeal of laws by reference to their titles alone. Pages 44, 45 of 50 Md.; *Redmond v. State,* 155 Md. 13, 17, 141 A. 383. And in *Barron v. Smith* (1908), 108 Md. 317, 70 A. 225, it was determined that a provision in the Code of Public General Laws may be repealed, so far as it relates to a territorial division of the state, by a statute making reference in its title to the article and section of the Code; and such statute is not in conflict with the portion of article 3, section 29, of the Constitution now under construction.

These last cited cases are all instances in which the constitutional requirement was considered in connection with a public law, and the combined effort of counsel and bench has not found a decision of this court in which the precise point here involved was determined. In the solution of the problem, the fact that there is no constitutional mandate with respect to the form of an enactment reviving or amending a private law, except that it be not revived or amended by reference to its title or section only, leaves, with this single restriction, absolute freedom in the formulation of the body of the statute. It is clear that the expression of the legislative intent must go beyond the enacting words and the repetition either of the title or of the title and the designation of the particular section by reference. It is also clear that the requirement that the enactment shall be of a certain form and manner in designated instances, exempts all different legislation from the operation of these particular constitutional provisions. So, what is necessary to gratify the clause in question, when applied to a law reviving or amending a private statute or one of its sections, lies between the necessity of going beyond a mere reference to its title or section, and

the privilege of enacting the law or section without setting it forth as it would read as amended, and in articles and in sections as the Code of Public General Laws is arranged. Within the limits bounded by these two extremes, a private act is constitutional unless it exemplify the legislative mischief the constitutional mandate was designed to correct. Although expressed in decisions in which public laws were involved, this court has summarized the evils, and stated the purpose of the inclusion of this clause in the Constitution, in *Davis v. State,* 7 Md. 151, 159, and *Barron v. Smith,* 108 Md. 317, 326, 327, 70 A. 225. From these decisions it would appear that the mischief to be corrected was the insertion of additional provisions in the body of the law, the striking out of phrases, clauses, sentences, or paragraphs, and the change, addition, or omission of words by mere reference to the place in the old law where the modification should be introduced, so that the former law would have to be examined and the two compared in order to understand the effect of the proposed legislation: In these illustrations, or in case there should be a revival of a law by reference to the title, the assemblymen would have to make an examination of the state of the law proposed to be amended and determine its effect, without having the law in its ultimate and certain form presented for their convenient consideration. The resulting confusion, which would be greatly increased in the event of other amendment, would make it difficult for the legislators to comprehend the pending bill, and for the public to know definitely the law of the subject. In addition, the confusion and uncertainty which arise from the proposed legislation not being submitted in its complete and contemplated form would afford greater opportunity for mistake, for the perpetration of wrong, and for the passage of undesirable, ill-advised, and corrupt measures. *Sutherland on Statutory Construction,* sec. 131; *Cooley's Constitutional Limitations* (8th Ed.), pp. 313-319.

If the projected special or private legislation should be clear and comprehensible from its language, and its effect

upon the subsisting law of which it is a revival or an amendment should be obvious, it is manifest, from the terms employed, that both the letter and the spirit of the clause of the Constitution would be gratified and the mischief remedied. So, if the reviving or amendatory act is complete in itself, or shall identify in terms the law to be affected, and shall explicitly embody the change in the existing law that will be accomplished by the new legislation, then no one reading the law is either misled as to the intent, or not apprised of the result of the new statute, which would, therefore, be neither within the letter nor the spirit of the constitutional prohibition.

In the present case the preamble to the act of 1872 may be resorted to for the purpose of obtaining information with respect to the provisions of the original charter. *Chesapeake & Ohio Canal Co. v. Balto. & O. R. R.,* 4 G. & J. 1, 90; *Levin v. Hewes,* 118 Md. 624, 634, 86 A. 233. By this preamble the intent to amend the specific charter is made clear, as well as the corporation's name, the limitation of its corporate life to thirty years, and the immediate necessity that the corporate franchises granted by the act should be continued in order that the beneficent purposes of the corporation be prolonged. The body of the enactment discloses the legislative intent to be: (A) The extension in time of a temporary corporate life to one in perpetuity without any alteration in the corporate powers ;and (B) the change of the old name of the "Maryland State Bible Society" to that of the "Maryland Bible Society," subject to the provisions (a) that the clear annual income of the corporate property shall not exceed the sum of $10,000, and that all suits shall be brought in the name of the president of the Maryland Bible Society; and (b) that the Legislature reserves the right to alter, amend, or repeal the new, as well as the original, at any time. See *Phinney v. Sheppard Hospital,* 88 Md. 633, 637, 42 A. 58; *Const.,* art. 3, sec. 48; *Hodges v. Railway Co.,* 58 Md. 603, 620, 621; Acts of 1870, chs. 6, 38, 127, 145, 149, 227; Acts of 1872, chs. 5, 6, 41, 129, 142; Acts of 1874, chs. 4,

74, 110, 111, 138, 192, 249, 316, similarly removing or extending time limit of corporate duration.

From the preceding statement of its form and content, it is conclusive that the act here assailed is neither within the letter nor the general purpose and policy of section 29 of article 3 of the Constitution.

C. The charter of the society authorizes it to hold by deed, bequest, or devise any interest in realty or personalty, and "to use, sell, mortgage, lease, transfer or convey all or any part of said property; provided, that the clear annual income of such estate, interest and property shall not exceed the sum of ten thousand dollars." Acts of 1842-43, ch. 290, sec. 2, 1872, ch. 118, sec. 3.

The sanction and consent of the Legislature to the gifts made by the testatrix to the society were given by Acts 1929, ch. 554, at page 1337. See *Basshor v. Dressel*, 34 Md. 503, 510, 511; *Koch v. North Ave. Rwy. Co.*, 75 Md. 222, 225-226, 23 A. 463; *Munich Co. v. United Surety Co.*, 113 Md. 203, 224-225, 77 A. 579. The property, however, if it should thus pass to the society, would yield a clear yearly income in excess of $10,000, provided the gift be put or kept in the form of an investment. So, the next of kin maintain that the corporation has no power to hold the gift and, therefore, cannot take it and, consequently, that a court of equity will not decree that the gift be delivered to the corporation, since it would be a nugatory act to put the corporation in possession of what it cannot keep within the law of its being.

The vice of this argument lies in its assumptions of fact. The limitation imposed by the statute is not upon the quantity or value of the corporate property, but upon its aggregate net yearly yield to the corporation, which may be predicted, but never ascertained until the end of year. Moreover, for its corporate purposes, the corporation may use, sell, mortgage, lease, transfer, or convey all or any part of this property at any time during any of the these successive periods of twelve months. The "promoting of the circulation of the Holy Scriptures, without note or comment," is a vast

design which is not limited in language nor in hemisphere, but is consistent with the expenditure of large capital sums in a single year. Hence the corporate assets at the close of a fiscal year may be much less than at the beginning, and the clear income so greatly affected by the corporate use made of the corporate property during the yearly period that, no matter how large the acquisition of property may have been throughout the year, at its close the net income of the aggregate assets would not exceed the sum prescribed by the statute. It follows that the statute contemplates, at the end of every year of corporate life, the computation of all income received upon all the corporate property which has at any time been held throughout that year; and that any excess of clear corporate income from all corporate assets is then determinable by such periodic calculations.

The position of the next of kin would require the test of the power to take depend upon the potential income of the particular gift at the time of its delivery, despite the fact there might never be any income received by the corporation, by reason of either a failure of dividends or of other expected yield, or of the application of the gift to corporate purposes. In other words, the argument of the next of kin is that, notwithstanding the corporation can lawfully use and expend, as quickly as requisite, the entire sum of the benefaction for any corporate purpose, the mere possibility that the gift may assume the form of an investment, which shall be suffered to continue for a period of one year, during which the clear income thereof shall be over $10,000, is sufficient to make the gift voidable. In order to accede to this construction, the operation of the provision under review is made to turn upon the probable, although essentially contingent and conjectural, earning capacity for the next succeeding year of the gift, at the time of its acquisition by the corporation, instead of upon the income of all corporate assets as definitely established at the end of the normal fiscal year of the corporation. Not only must an ascertained fact at the end of a year be abandoned for an assumption, at the beginning

of that period, of what that fact may be at the termination of the year, but this assumption also exacts the arbitrary rejection of the possibility of the exercise of any corporate power other than keeping the gift intact as a capital investment, although the animating purpose of the corporate enterprise is not the accumulation of invested funds nor the earning of financial profit, but the diffusion of the Holy Scriptures through a wide circulation among all the nations of the earth. From these considerations it is apparent that the test of the corporate power to have and to hold the property of which it is the owner is at those recurring annual periods when the clear income of all its property for the preceding year is determined. By limiting to a fixed amount the net annual income of the corporation from all its property, the statute effectively restrained within definite limits the accumulation of productive capital assets in the corporation. The distinguishing feature of the limitation is that it is measured by a periodic net income, which is derived from all the corporate property and is fixed in its greatest amount, but which may remain, notwithstanding large productive benefactions, within the prescribed bounds, by the conversion and consumption, at any time and to any extent, of the corporate property in the prosecution of the pious purpose for which the corporation was created.

Consequently, on reason and authority, the gift in question passes to the Maryland Bible Society; and, should the clear yearly income from all corporate property be increased to an amount in excess of the charter limitations, the State, and not the next of kin, may then complain. By this construction the intention of the Legislature, as manifested by the provision in question and the context, is gratified, and the rule for this jurisdiction, stated in *Hanson v. Little Sisters,* 79 Md. 434, 439, 440, 32 A. 1052; *In re Stickney's Will,* 85 Md. 79, 104-107, 36 A. 654; *Waters v. Order Holy Cross,* 155 Md. 146, 154, 142 A. 297; *Jones v. Habersham,* 107 U. S. 174, 187, 2 S. Ct. 336, 27 L. Ed. 401; Id., 3 *Woods,* 443, 13 Fed. Cas., page 957, No. 7465, is enforced.

To exceed a limit in the holding of property, whether measured in terms of value or income, is not a private wrong but a violation of a policy or mandate of the State with consequences which the State alone may redress.

The cases last cited are precedents against the points made by the next of kin on this phase of the case. The doctrine of this forum, that the acquisition and holding of property by a corporation in excess of a charter limitation cannot be questioned by a private person, but the State alone may assert the voidable nature of the acquisition or holding, in a direct proceeding begun for that purpose, is announced and applied in instances (a) where the statutory restriction is expressed in language similar to that used in the will at bar; (b) where the gift attacked itself exceeds in amount or income the charter limitation, instead of becoming violative of the inhibition when added to the property already owned by the corporation; and (c) where personalty was the kind of property involved and the personal representative of the testator had not assented to the gift. *Jones v. Habersham,* 107 U. S. 174, 187, 2 S. Ct. 336, 27 L. Ed. 401; *Hanson v. Little Sisters,* 79 Md. 434, 439, 32 A. 1052; *In re Stickney's Will,* 85 Md. 79, 104, 36 A. 654; *Waters v. Order of Holy Cross,* 155 Md. 146, 154, 142 A. 297.

The last point rests upon the erroneous conception that the legatee has no title to his bequest until the executor has made a distribution to the residuary legatee of his portion of the residuary estate. *Drovers' etc. Bank v. Hughes,* 83 Md. 355, 361, 34 A. 1012. This view is too narrow, as it ignores the distinction between a legal and an equitable title, and between property which is vested in interest but not in possession, and property which is vested both in interest and possession. A residuary bequest is a general and not a specific legacy, as the residuary legatee takes the rest and residue of the personal estate after the payment of all costs and expenses of administration, of the debts and charges against the estate, and of all other legacies having priority under the will. *Miller's Construction of Wills,* secs. 58, 131; *Miller v.*

*Weber,* 126 Md. 658, 663, 664, 95 A. 962. At the death of the testator the legal title to all the personalty devolves upon the executor for the purpose of administration in due course and according to the terms of the will, and, in order to protect him against liability for the testator's debts to the extent of the assets in his possession, no legatee could acquire a complete title to his bequest without the assent of the executor to the delivery of the legacy. So, while the legal estate in the personalty passing under the residuary clause of the will was vested in the executor from the time of the death of the testatrix, and would not ordinarily pass from the executor to the residuary legatee, so as to give the legatee the right to maintain an acton at law for the bequest, before the executor had signified his assent by making a distribution of the residue of the esate, yet until, by this distribution, the residuary bequest became fixed in kind or sum and the title absolute and complete, the inchoate or beneficial title in the residue, although uncertain in amount or kind, was concurrently vested in interest in the residuary legatee, or his assignee or personal representative. *Drovers' etc. Bank v. Hughes,* 83 Md. 355, 360, 361, 34 A. 1012; *Rockwell v. Young,* 60 Md. 563, 566; *Schaefer v. Spear,* 148 Md. 620, 627, 129 A. 898; *Sloan v. Sloan,* 117 Md. 141, 150, 151, 83 A. 38; *Cream v. McMahon,* 106 Md. 507, 519-522, 68 A. 265; *Bagby's Executors and Administrators* (2d Ed.) sec. 42; *Woerner on Law of Administration* (3d Ed.), sec. 453; *Schouler on Wills etc.* (6th Ed.), sec. 3071; *Williams on Executors,* vol. 2, 1225, 1226 (star); *Roper on Legacies,* vol. 1, 844 (star).

The consent of the executor creates no new title, and that of the residuary legatee is derived through the will, and generally perfected or completed by administration in the orphans' court and a distribution; but where the validity of a devise or bequest is the inquiry for determination, or where the proper settlement of an estate is rendered difficult and complicated by the true construction of the will and by the uncertainty of who are the next of kin and parties in inter-

est, recourse may be had to equity, which will assume jurisdiction to superintend the administration of assets, and to decree distribution among the legatees and distributees without reference to the assent of the executor to the legacy. *Fenby v. Johnson,* 21 Md. 106, 116, 119; *Myers v. Forbes,* 74 Md. 355, 360, 363, 22 A. 410; *Davis v. Clabaugh,* 30 Md. 508, 510, 511; *Ege v. Hering,* 108 Md. 391, 412, 415, 70 A. 221; *Reilly v. Union Protestant Infirmary,* 87 Md. 664, 666, 40 A. 894; *Myers v. Safe Deposit Co.,* 73 Md. 413, 427, 428, 21 A. 58; *Myers v. Kooke,* 146 Md. 471, 473, 474, 126 A. 710.

So, by bringing the construction of the will and the further administration and the distribution of the estate under the jurisdiction, supervision, and direction of chancery, the assent of the executor, the party complainant to the cause, to the several legacies, is implicit in whatever the chancellor may decree with respect to these legacies. The equitable title to the shares is now in the society, and its title will be complete with the passage of a decree determining and distributing its share. *Supra; Jones v. Habersham,* 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401; *Id.,* 3 Woods, 443, 13 Fed. Cas., page 957, No. 7465; *In re Stickney's Will,* 85 Md. 79, 98, 36 A. 654, 35 L. R. A. 693, 60 Am. St. Rep. 308; *Waters v. Order of Holy Cross,* 155 Md. 146, 142 A. 297.

As a result of these conclusions, the several gifts to the Maryland Bible Society are valid.

II. In disposing of a one-half of the residue of her estate, the testatrix separated it for testamentary purposes in twelve equal parts, and disposed of two of these undivided interests in these terms: "To the 'Home for Incurables for Men' in Baltimore, Maryland, one of said twelve equal portions or shares; To the 'Home for Incurables for Women in Baltimore,' Maryland, one of said twelve equal portions or shares."

The testatrix wrote the will, and her punctuation and capitalization appear from the text to be so free, arbitrary, and variable as to afford no reliable guide to her meaning.

A striking illustration of this characteristic occurs in an earlier item of her will, where she exercised a contingent power of appointment by giving a fourth part of the subject matter to the "Home for Incurables for Men" and another fourth to the "Home for Incurables for Women," without any other description. It will be observed that, although she employed quotation marks, she omitted from the second name the last two words which were inclosed within quotation marks in the item of the will to be construed. Under such circumstances, the meaning will not be controlled by punctuation or capitalization, if the itention of the testatrix can otherwise be ascertained. The discovery of a testamentary design may be added, but not defeated, by punctuation or capitalization. *Black v. Herring,* 79 Md. 146, 149, 28 A. 1063; *Olivet v. Whitworth,* 82 Md. 258, 277, 33 A. 723; *Miller v. Weber,* 126 Md. 658, 663, 95 A. 962; *Ewing v. Burnet,* 11 Pet. 41, 9 L. Ed. 624; *Miller on Construction of Wills,* sec. 20, p. 78; *State v. Warfield,* 139 Md. 74, 77, 114 A. 835.

If the quotation marks be disregarded, the two names are identical with the exception of *for Men* in the one and *for Women* in the second. The context of the will makes it plain that the names were each intended to designate a corporate body. However, neither at the time of the making of the will nor since has there been any corporation in Baltimore nor in this state whose corporate title corresponded to either of the two given in the will. It is indispensable to the validity of every testamentary disposition that there be not only a definite subject of disposition but a definite object of the testator's bounty. There is admittedly no uncertainty with reference to the subject, but the next of kin insists there is no certain object in either gift because no such corporations exist. While it is true there is no corporation whose title literally agrees with that of the beneficiary of either gift, yet a misnomer will not defeat a devise or legacy if the identity of the beneficiary is otherwise sufficiently certain. As is admirably stated in *Miller's Construction of Wills,* sec. 51: "The name is simply descriptive of the legatee. The name

is no more the legatee than is the name of an individual the individual himself. It is the identity of the individual, natural or artificial, that is material, not the name, for this name is simply one of the means by which the identity is ascertained. The identity being established, the name is of no importance." And, so, in the case of a corporation, provided the corporation intended is made apparent. If it is the testator's intention that a particular corporation should take the gift, and if that intention sufficiently appear from the language of the will, when read in connection with the situation of the testator at the time the will was written, then the real legatee or devisee is ascertained and will take, notwithstanding the inaccuracy with which the corporation has been named. The effect of holding a legacy or devise void because of a misnomer of the beneficiary is to divert the gift from the object of the testator's bounty and to bestow it upon those whom the testator intended should not receive it, so the court will endeavor to preserve the intention of the testator, as made known by the words of the will and the circumstances which attended the testator at its execution. *Miller's Construction of Wills,* sec. 52, 10, 13. There are many illustrations of this rule in the reports, as, for example, *Reilly v. Union Protestant Infirmary,* 87 Md. 664, 666, 40 A. 894; *Doan v. Ascension Parish,* 103 Md. 662, 665, 64 A. 314; *Woman's Soc. v. Mitchell,* 93 Md. 199, 202-205, 48 A. 737; *Holloway v. Mission Helpers,* 119 Md. 667, 671-672, 87 A. 269; *Board of Foreign Missions v. Shoemaker,* 133 Md. 594, 599, 105 A. 748; *Gardner v. McNeal,* 117 Md. 27, 32-33, 82 A. 988.

When the testatrix made the will she was a spinster with wealth. She lived in Baltimore and wrote the will in her own handwriting, and the words of the immediate clause under consideration declare a testamentary intention to aid by gift in securing and maintaining a home for a general class which is composed of those diseased persons who are incurably afflicted. Her language, also, made clear that in this charity she desired her benefaction to be devoted equally to the relief of men and women, because she devised and

bequeathed the same portion of her estate for each sex. It is further manifest from the four corners of the will that she intended and believed that an existing corporation was the object of her bounty and the selected legal entity through which her charity should be accomplished. This is plain because, in the preceding item 16 of her will, she exercised a contingent power of appointment of a trust fund by giving a fourth to each of two corporations, and then a fourth to the "Home for Incurables for Men," and the last fourth to the "Home for Incurables for Women," and concluded the appointment with the explanatory sentence: "The property so given to the said corporations to be applied in each instance by the recipient to its corporate purposes." The definite terms of this sentence are not modified by any portion of the will, so it is indisputable that the testatrix intended a corporation to take each gift, but the words are not inconsistent with the two gifts for a home for the incurables being intended for a corporate entity whose function was to secure and maintain a home for the incurables of both sexes.

Having been informed by the words of the document of the testator's testamentary design, the circumstances under which she wrote clarify her meaning and make certain the object of her two gifts. When the testatrix was in the course of forming her plan for the will, she knew that, under the name of Home for Incurables of Baltimore City there was a charitable corporation engaged in providing a home for incurables. This institution was incorporated in 1883 for the "creation and maintenance of a hospital or asylum in and near the City of Baltimore," with its principal office in Baltimore. It was a corporation without capital stock or shareholders, and depended upon charitable contributions for its support. Although both sexes were within the scope of its relief, the corporation, notwithstanding a continuous intention, had never been able financially to receive men as inmates to its home. At the time of writing the will, and for more than twenty years afterward, there was no institution in Baltimore or within the State of Maryland that provided

a home for incurables except the Home for Incurables of Bailtimore City.

When the testatrix expressly discloses in her will that it is a subsisting corporation which is the object of each of her gifts, and that this corporation is located in the city of her own residence, and there is, at the execution of her will, in the whole state but one existing legal entity whose corporate functions embrace and can fulfill the benevolent purpose of the testatrix and, so, answer the descriptive terms of her will, it is certain beyond reasonable denial that this single corporation, which was known to her when she wrote the will, is the one intended by the testatrix. It is not incompatible with this construction that there are two subjects of disposition, since a plurality of legacy or devise to one legatee or devisee is not an anomaly. The words of each gift would be identical if *for Men,* in one, and *for Women,* in the other, were left out, and this elimination would leave no question as to the identity of the beneficiary in each gift. When the testatrix sat down to write her will, without aid of counsel, it would be unreasonable to hold her to technical accuracy, and the interpolation of the words *for Men* and *for Women* in the title, together with the division of the share given to the corporation into two parts, was obviously to indicate the writer's desire that the legatee and devisee would use one-half for men and one-half for women in providing a home for the incurable. If the words were capable of a two-fold construction, and one would defeat and the other effectuate the testator's object, the court is bound to choose the construction which would prevent an intestacy.

Since the property was given to the corporation for such uses or application as are within the scope of its corporate purposes, and there was no intention on the part of the testatrix to create a trust, the gifts cannot be declared void on the ground that they were in trust for indefinite purposes or in conflict with the rule aaginst perpetuities. *Hanson v. Little Sisters,* 79 Md. 434, 436, 32 A. 1052; *Trinity Church v. Baker,* 91 Md. 539, 46 A. 1020; *Waters v. Order of Holy Cross,* 155 Md. 146, 151, 142 A. 297; *Ege v. Hering,* 108

Md. 391, 70 A. 221; *Board of Foreign Missions v. Shoemaker,* 133 Md. 594, 105 A. 748; *Peter v. Carter,* 70 Md. 139, 16 A. 450; *Halsey v. Convention,* 75 Md. 275, 281, 23 A. 781; *Baltzell v. Church Home,* 110 Md. 244, 271, 73 A. 151; *Miller's Construction of Wills,* sec. 164, p. 439.

The chancellor held the legacy and devise to the Home for Incurables for Men was void, but sustained the legacy and devise to the Home for Incurables for Women. In failing to decree both gifts valid he was in error.

III. The remaining questions arise on these further provisions of item 20:

"To the 'Invalid Fund for Disabled Ministers' in the care of the trustees of the General Assembly of the Presbyterian Church in the United States (popularly known as the Southern Presbyterian Church) one of said twelve equal portions or shares; To the trustees of the General Assembly of the Presbyterian Church (popularly known as the Southern Presbyterian Church) one of said twelve equal portions or shares, and I suggest that the same or the proceeds thereof be applied by the said General Assembly to the Home Missions Work in its charge."

The next of kin do not question the validity of the second gift but the first is challenged as void.

The corporation known as the Trustees of the General Assembly of the Presbyterian Church in the United States was incorporated by the State of North Carolina in 1866 (Private Laws of North Carolina, Acts of 1866, ch. 30). It was granted full capacity to take and hold all forms of property, whether acquired by gift, purchase, devise, or bequest. Its broad powers and functions were further enlarged by the passage of an amendment in 1872 (Laws of North Carolina, Acts of 1871-72, ch. 87) that enabled the corporation to undertake and carry on works for the relief of invalid ministers and the widows and children of deceased ministers, and all other benevolent objects of the church. From that time until the death of the testatrix on July 24th, 1928, the only pertinent changes in this corporate charter were made in July, 1925, by an amendment removing all limitations

upon the property which could be held, and lengthening the corporate name by an addition which made the title read: Trustees of the General Assembly of the Presbyterian Church in the United States and the Presbyterian Foundation, Incorporated.

When the will was made, in December, 1897, one of its corporate purposes was the relief of invalid or disabled ministers, or the undertaking of any other benevolence with reference to this class. So, the gift was well within the corporate capacity to acquire. The difficulty arises because of the manner of making the gift. It is not made direct to the corporation or to any unincorporated agency of the corporation, for the purpose of carrying on certain corporate functions of the corporation, but is to a *fund* which is used for a specific corporate function. And the gift is to a corporate fund which is in care of the legal entity to take the title of all the corporate property and to use, hold, and administer this property for its several corporate functions. The language is plain enough to show that the testatrix must necessarily have intended the absolute title to pass to the corporation to use the gift thus acquired as a portion of an existing fund then in its hands for a specific corporate purpose. Where the intention of the testatrix is so evident, a mere inartificiality in expression will not be permitted to divert a clear testamentary purpose into an intestacy. *Miller's Construction of Wills,* secs. 164, 165, pp. 434-445; *Littig v. Hance,* 81 Md. 416, 424-426, 32 A. 343; *Holloway v. Mission Helpers,* 119 Md. 667, 671-672, 87 A. 269; *Board of Foreign Missions v. Shoemaker,* 133 Md. 594, 599, 601, 105 A. 748; *Mather v. Knight,* 143 Md. 612, 614, 123 A. 109; *Waters v. Order of Holy Cross,* 155 Md. 152, 142 A. 297; *Reilly v. Union Protestant Infirmary,* 87 Md. 664, 40 A. 894. In the present instance there was no intention to create a trust, so no trust for uncertain beneficiaries is created, and this gift to a religious corporation for its corporate purposes is not invalid, although the beneficiaries of the corporation are uncertain. *Supra; Eutaw Place Church v. Shively,* 67 Md. 493, 10 A. 244; *Peter v Carter,* 70 Md. 139 16 A. 450;

*Halsey v. Convention,* 75 Md. 275, 23 A. 781; *Hanson v. Little Sisters,* 79 Md. 434, 32 A. 1052; *Bennett v. Humane Impartial Society,* 91 Md. 10, 45 A. 888; *Baltzell v. Church Home,* 110 Md. 244, 271, 272, 73 A. 151; *Doan v. Ascension Parish,* 103 Md. 662, 664, 64 A. 314; *Ege v. Hering,* 108 Md. 391, 413, 417, 418, 70 A. 221; *Gray v. Orphans' Home,* 128 Md. 592, 601-602, 98 A. 202; *Conner v. Trinity Church,* 129 Md. 360, 363-365, 99 A. 547; *Rydzewski v. Grace Church,* 145 Md. 531, 536, 537, 125 A. 717.

It follows that the chancellor rightly held and decreed that the legacy and devise here discussed passed under the will to the Trustees of the General Assembly of the Presbyterian Church in the United States according to its present amended corporate name.

For error in declaring the gift to the Home for Incurables for Men in Baltimore, Md., void, the decree must be reversed, but in other respects the decree is affirmed.

> *Decree affirmed in part and reversed in part, and cause remanded for further proceedings in conformity with this decision; the costs of this appeal to be paid out of the residuary fund.*